JOEL REZNICK, Plaintiff-Appellant, *v.* HOME INSURANCE COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 62730

Opinion filed February 1, 1977.

William J. Stevens, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson, of counsel), for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Joel Reznick (plaintiff) brought suit on a comprehensive coverage insurance policy issued by Home Insurance Company (defendant) to recover for the loss of his Ford LTD station wagon which he claimed was covered by this policy. Summary judgment was entered for defendant, and on appeal plaintiff raises the following issues: (1) did plaintiff have an insurable interest in the vehicle; and (2) did the comprehensive coverage provision of plaintiff's policy cover loss of an automobile caused by confiscation due to the fact the vehicle had been stolen when the insured was a good faith purchaser.

The relevant facts underlying this cause of action are as follows. In October 1965, plaintiff entered into an insurance agreement with defendant for plaintiff's 1961 Chevrolet. In February 1973, this insurance agreement was amended to include coverage of a 1971 Ford LTD station wagon purchased, as described below, by plaintiff in February of that year. The insurance agreement included comprehensive coverage which, amongst other things, provided that:

"The Company will pay for loss to an owned automobile or to a non-owned private passenger automobile, except loss caused by collision, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the Declarations as applicable hereto, except no deductible shall apply to loss by (a) theft or larceny of the entire automobile, (b) fire or lightning, (c) smoke or smudge due to a sudden, unusual and faulty operation of any fixed heating equipment serving the premises in which the automobile is located, or (d) the stranding, sinking, burning, collision or derailment of any conveyance in or upon which the automobile is being transported. For the purpose of this Coverage, breakage of glass and loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion or colliding with a bird or animal shall not be deemed to be loss caused by collision."

Plaintiff purchased the Ford LTD station wagon in response to a newspaper advertisement and paid $2,600 for that car. Plaintiff received a notarized bill of sale for the vehicle and a certificate of title from the Illinois Secretary of State. The title was revoked several months after the vehicle was confiscated, on November 20, 1973, as a stolen vehicle by

agents from the Secretary of State's office and the Chicago Police Department.

Plaintiff filed a complaint against defendant alleging he had entered an insurance agreement with defendant for which he had paid consideration and which promised to compensate him for any loss of the Ford, except that caused by collision. He further alleged defendant had been given proper notice of plaintiff's claim. Defendant answered admitting the insurance agreement but denying that plaintiff had an insurable interest in that Ford. Affirmatively defendant pleaded that the Ford was not an "owned automobile"[1] as defined in plaintiff's policy; and that plaintiff did not have an insurable interest in the Ford.

The parties entered into a stipulation as to the following pertinent facts: (1) the Ford was stolen from Affiliates Steam Equipment Co. on January 10, 1973; (2) plaintiff purchased on February 9, 1973, the Ford from a person holding himself out to be James Miterko and paid $2,600 for that car; (3) plaintiff requested that this insurance policy be amended to include the Ford; (4) on February 17, 1973, the policy was so amended to include that Ford; (5) on November 20, 1973, the Ford was identified as the stolen vehicle and confiscated by agents from the Secretary of State's office and the Chicago Police Department; (6) the title previously issued by the Secretary of State to plaintiff was revoked on April 11, 1974; (7) the policy attached to the pleadings was a true and correct copy of the agreement between the parties; and (8) the fair market value of the Ford at the time it was confiscated was $2,300.

Neither by way of pleadings, stipulations, nor in the briefs do the parties indicate whether the premiums were paid, unpaid, or whether the insurance company had retained the premiums (if) paid by plaintiff or tendered these premiums back to plaintiff after claiming plaintiff had no insurable interest in the vehicle.

Both parties moved for summary judgment, and on July 30, 1975, the trial court denied plaintiff's motion and granted judgment for defendant, specifying the following reasons for its decision:

> "The definition of 'owned auto' necessarily includes the meaning inherent in the words 'owned auto;' the Court finds that the insured had an insurable interest against all persons except the true owner and none as against the true owner."

## I.

■■ First we consider whether plaintiff had an insurable interest in the Ford. It is well settled that in order to collect under an insurance agreement, one must have an insurable interest in the insured item.

---

[1] As defined by the insurance policy, an "owned automobile" means:

"(a) a private passenger or utility automobile described in the Declarations."

(Couch on Insurance 2d §24:1.) Insurable interest is not necessarily equated with clear title, and the meaning of the term "insurable interest" is not without dispute. See *Ernie Miller Pontiac, Inc. v. Home Insurance Co.* (Okla. 1975), 534 P.2d 1; *Treit v. Oregon Auto Insurance Co.* (1972), 262 Ore. 549, 499 P.2d 335; *Skaff v. United States Fidelity & Guaranty Co.* (Fla. App. 1968), 215 So. 2d 35, 33 A.L.R. 3d 1414; *Lieberman v. Hartford Fire Insurance Co.* (1st Dist. 1972), 6 Ill. App. 3d 948, 287 N.E.2d 38.

While some states have statutes defining insurable interest, in Illinois we do not have the guidance of such a statutory definition. In discussing "insurable interest," *Lieberman* cites Couch on Insurance §24:13 (2d ed. 1960), which states:

> "Generally speaking, a person has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction."

In *Lieberman*, plaintiff failed to demonstrate that he was in any way injured by the destruction of a building for which he was attempting to recover under a fire insurance policy. In the case at bar, plaintiff has shown through his pleadings and deposition that he has suffered the loss of the advantage of the use of the car as well as the economic loss of $2,600 which he paid as a good faith purchaser of that Ford.

While some jurisdictions hold a good faith purchaser of a stolen automobile has no insurable interest in such vehicle (*Ernie Miller Pontiac, Inc. v. Home Insurance Co.; Insurance Company of North America v. Cliff Pettit Motors, Inc.* (Tenn. 1974), 513 S.W.2d 785, 787; *Herrington v. American Security Insurance Co.* (1971), 124 Ga. App. 617, 184 S.E.2d 673, 674), others have held that a good faith purchaser has an insurable interest since he has good title against all but the true owner (*Scarola v. Insurance Company of North America* (1972), 31 N.Y.2d 411, 340 N.Y.S.2d 630, 292 N.E.2d 776; *Barnett v. London Assur. Corp.* (1926), 138 Wash. 673, 245 P. 3, 4). Plaintiff is not involved in a dispute with the true owner, but rather with the insurance company which has accepted premium payments by plaintiff in consideration for comprehensive insurance coverage on the Ford. Plaintiff had a right of possession of the car against any contrary assertion, except that of the the true owner.

■■ We find that plaintiff has established in his pleadings and his deposition admitted as part of the record that he would have profited by continued possession of the Ford, and that he suffered an economic loss by its confiscation. We agree with those courts which, under similar facts, hold that a good faith purchaser of a stolen automobile has an insurable interest in such vehicle. *Skaff v. United States Fidelity & Guaranty Co.*; Annot., 33 A.L.R.3d 1417, 1423 (1970).

■■ Furthermore, in our opinion, the Ford falls within the definition of an "owned auto" as defined in the policy drawn by defendant. That policy defines "owned auto" as: " * * * a private passenger or utility automobile described in the Declarations." There is no dispute that the declarations of plaintiff's insurance agreement were amended to include the subject Ford. Thus the Ford, which was described in the declarations of the policy, is within the policy's definition of "owned auto" and was insured under the comprehensive provisions of the insurance agreement.

## II.

■■ The second issue concerns whether this type of loss was covered by the comprehensive coverage provisions of the insurance agreement. Defendant cites cases to support its argument that the repossession of a stolen vehicle does not constitute a theft pursuant to the comprehensive coverage. (*Jackson v. Teachers Insurance Co.* (1973), 30 Cal. App. 3d 341, 106 Cal. Rptr. 208; *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Insurance Co.* (Texas 1971), 465 S.W.2d 933.) However, plaintiff concedes this is not a case of theft, but rather argues that the confiscation of the automobile in the case at bar is covered by the terms of the comprehensive coverage. That coverage provides:

> "The Company will pay for loss to an owned automobile * * * except loss caused by collision * * *."

Defendant argues that the preposition "to" rules out any loss "of" the entire automobile unless the loss is the result of larceny or theft, or any other exception specified by the policy. Yet "loss" as defined by defendant's policy contains within its definition both *loss of* and *damage* to an insured vehicle:

> " 'Loss' means direct and accidental loss of or damage to
> (a) the automobile, * * *."

The terms of the policy encompass *any direct* and accidental *loss of* or damage to *the Ford*, except loss caused by a collision.

An insurance contract is to be construed in the same manner as any other contract (22 Ill. L. & Prac. Insurance § 101 (1956)), and will be construed against the drafter of the instrument where the terms of that contract are ambiguous (*Maretti v. Midland National Insurance Co.* (1st Dist. 1963), 42 Ill. App. 2d 17, 28, 190 N.E.2d 597, 603). In the case at bar, the insurance policy, according to the copy of the policy attached to the pleadings, offered no title insurance. However, anyone purchasing the comprehensive coverage offered by this policy would be justified in a belief that any loss except a loss by collision or any other specific exception made in the policy, would be covered by the comprehensive provision. It is also to be noted that the policy contains no specific exclusions in the "exclusions" section to the comprehensive coverage.

Thus the confiscation of the Ford is a loss covered by the comprehensive provisions of the policy, and plaintiff is entitled to compensation for the value of the Ford at the time of his loss of that automobile.

The judgment of the circuit court of Cook County is reversed and the matter is remanded with directions to enter summary judgment for plaintiff.

Reversed and remanded with directions.

STAMOS and JIGANTI, JJ., concur.