1999-NMSC-012

979 P.2d 231

**WESTERN FARM BUREAU
INSURANCE COMPANY,
Plaintiff–Appellee,**

v.

**Sterling CARTER, Judith Carter, and
Brian Carter, Defendants–
Appellants.**

**No. 24,800.**

Supreme Court of New Mexico.

Feb. 25, 1999.

Keithly & English, John E. Keithly, Anthony, for Appellants.

Madison, Harbour, & Mroz, P.A., Gregory D. Steinman, Albuquerque, for Appellee.

*OPINION*

FRANCHINI, Justice.

{1}   In this case, we determine that repossession of a stolen vehicle is a covered loss under a comprehensive automobile insurance policy that states that the insurer "will pay for any direct and accidental loss of, or damage to, your insured vehicle and its equipment not caused by collision or rollover," provided the insured party innocently purchased the stolen vehicle.

*FACTS AND PROCEDURAL POSTURE*

{2} The facts relevant to this appeal are straightforward. In May and June 1995, Sterling and Judith Carter and their adult son, Brian Carter, (the Carters) purchased two vehicles that were later determined by law enforcement officials to have been stolen. Prior to such determination, the Carters had added both vehicles to an insurance policy (the Policy) issued to them by Western Farm Bureau Insurance Company (Western). Following impoundment of the vehicles by the police and repossession of the vehicles by their rightful owners, the Carters filed a claim with Western for loss of the vehicles. Western denied the claim. Subsequently, Western filed this action in the district court seeking a declaratory judgment that the Carters' loss of the vehicles was not a covered loss under the Policy.

{3} After cross-motions by the parties, the district court issued an order granting Western's motion for summary judgment and dismissing the Carters' counterclaims against Western for failure to pay. The Carters appealed. The Court of Appeals certified the matter to this Court as a case involving an issue of substantial public interest and first impression in New Mexico, namely, "whether the comprehensive clause of an insurance policy covers the repossession of a stolen vehicle from a subsequent purchaser of the vehicle." We accepted certification and now reverse the district court's grant of summary judgment.

*DISCUSSION*

*Standard of Review*

■■■ {4} Interpretation of the coverage provisions of an insurance contract is a matter of law reviewed de novo. *See Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 60, 123 N.M. 752, 945 P.2d 970. We construe ambiguous provisions against the party that drafted the policy, which is usually the insurance company. *See Crow v. Capitol Bankers Life Ins. Co.*, 119 N.M. 452, 456, 891 P.2d 1206, 1210 (1995). Unambiguous provisions, however, are strictly enforced according to their terms and conditions. *Id.*

*Whether the Carters' Loss Is Covered by the Policy*

■ {5} The terms and conditions of the Policy are clear. "**Coverage S**" of the Policy states in pertinent part:

We will pay for any direct and accidental loss of, or damage to, your **insured vehicle** and its equipment not caused by collision or rollover. Loss or damage from missiles, falling objects, theft, collision with animals, or accidental glass breakage are comprehensive losses.

(Boldface type in original.) We have no difficulty determining from this language that the Carters' loss of their vehicles by repossession was a covered loss. First, use of the word "any" suggests that every loss of a vehicle is covered except those that are specifically excluded, such as "collision or rollover" losses. Second, we note that outside of this provision Western took the trouble of attaching additional exclusions to the automobile section of the Policy; for example, "Under Coverages, [sic] R, S, and T, loss caused by recall of an insured vehicle." Loss by an innocent purchaser through repossession is not so excluded. Third, the fact that Western labeled the "Coverage S" provision of the Policy "**Comprehensive**" indicates that the enumerated covered losses (from damage by missiles, etc.) are simply illustrative and not exhaustive. (Boldface type in original.)

{6} Based on the foregoing analysis, we hold that the Policy covered the loss of a vehicle in the circumstances presented here. A majority of courts have reached the same conclusion. *See, e.g., Butler v. Farmers Ins. Co.*, 126 Ariz. 371, 616 P.2d 46, 48–49 (1980) (in banc); *Reznick v. Home Ins. Co.*, 45 Ill.App.3d 1058, 4 Ill.Dec. 525, 360 N.E.2d 461, 464–65 (1977); *Kast v. Citizens Mut. Ins. Co.*, 125 Mich.App. 309, 336 N.W.2d 18, 19–20 (1983). *Cf. Smith v. State Farm Mut. Auto. Ins. Co.*, 231 So.2d 193, 194 (Fla.1970) (holding that insurance contract covered loss but limiting, according to the express terms of the policy, insurer's liability to reimbursement for temporary loss of use of the vehicle instead of the full purchase price of the vehicle). *But see Cueto v. Allstate Ins. Co.*, 226 N.J.Super. 487, 544 A.2d 906, 909 (1987) (granting summary judgment for insurance

company where policy only covered losses "to" and not "of" a vehicle); *Sauer v. Vigilant Ins. Co.*, 102 Misc.2d 243, 423 N.Y.S.2d 138, 139 (N.Y.City Civ.Ct.1979) (deciding, without reprinting the disputed policy terms, that "[s]uch a repossession [by the true owner] ... is not covered by the insurance policy written by defendant"). When presented with policy language almost identical to the language in "Coverage S" of the Policy in this case, the Michigan Court of Appeals found in favor of the insured, reasoning, "The inclusive language implied that coverage would be granted in every case of damage to, or loss of, the vehicle except collision." *Kast*, 336 N.W.2d at 20. We are persuaded that the same reasoning and result apply in this case.

■ {7} Western argues that the Carters' loss by repossession is not within "Coverage S" of the Policy because it was not "direct and accidental." Western contends that the Carters only indirectly lost their vehicles and that their true, direct loss was the loss of their purchase money to the car thieves. We disagree with this characterization of the Carters' loss. The Carters' vehicles were physically taken from their possession and the Carters will not be able to use those vehicles again, which is sufficient in our view to constitute a direct and complete loss.

■ {8} Western also contends that the Carters' loss was not accidental because "repossession of these vehicles was a deliberate and calculated process by the true owners as well as the law enforcement agencies involved." This construction of the word "accidental" focuses on the intentions of the repossessing parties and agents, consequently overlooking what we believe is the rationale behind the requirement that a loss be accidental. As described by one authority in a related context, "[A]mong the evils sought to be discouraged by the insurable interest requirement [in insurance contracts] is the *intentional* destruction of the covered property [by the insured] in order to profit from the insurance proceeds." Jay M. Zitter, Annotation, *Automobile Fire, Theft, and Collision Insurance: Insurable Interest in Stolen Motor Vehicle*, 38 A.L.R.4th 538, 544 (1985) (emphasis added). We interpret the use of the term "accidental" in the instant Policy to be aimed at preventing similar intentional destruction of covered property for evil ends. Thus, we hold that in this case it is the insured's actions and not those of third parties that are relevant in determining the meaning of "accidental." Of course, preventing evildoers from profiting from their evil actions at the expense of insurance companies is as much a policy goal in the circumstances of a knowing purchase of a stolen vehicle as it is in the case of intentional destruction of property. For this reason, we further hold that Western is not liable under the Policy for payment of the Carters' claim of loss *if the Carters were not innocent purchasers of the two repossessed vehicles.*

{9} As we discuss below, however, we express no opinion at this time as to whether the Carters did or did not innocently purchase their vehicles. Similarly, we do not determine whether the Carters had an insurable interest in their vehicles, since such a determination turns on whether they were innocent purchasers. *See* NMSA 1978, § 59A–18–6(B) (1984) (defining "insurable interest" as "any ... *lawful* ... economic interest in the safety and preservation of the subject of the insurance") (emphasis added). Our purpose herein is solely to determine the scope of coverage set out in the Policy issued by Western to the Carters. In that regard, we do not find it necessary to formulate a comprehensive definition of the term "accidental" for use in cases such as this one. Rather, in the words of the Arizona Supreme Court concerning a policy provision similar to "Coverage S" of the Policy in this case, "Suffice it to say ... that either unanticipated or unintentional occurrences are sufficient, and since repossession by an unknown owner is neither foreseeable nor deliberate, the loss to appellant must fall within the coverage of the contract." *Butler*, 616 P.2d at 48.

{10} Citing *Cueto*, 544 A.2d at 908–09, and *Sauer*, 423 N.Y.S.2d at 139, Western insists that if the Carters had wanted protection against repossession in the event the vehicles they purchased turned out to be stolen, they should have secured title insurance. As we have noted, the insurance contract in *Sauer* was not reproduced in the published opinion, so we have no means of

comparing it to the Policy at issue here. In *Cueto*, a New Jersey trial court ruled that "[t]he confiscation of a vehicle by the police while enforcing the property rights of the true owner is not a risk within the expectation of a purchaser of automobile insurance ." *Cueto*, 544 A.2d at 908. We are ill-equipped to make a similar determination regarding the expectations of purchasers of all the various automobile insurance policies issued in New Mexico. Examining the particular policy in this case, however, we cannot say that the Carters were mistaken in thinking that "Coverage S" embraced their claim against Western. Instead, we agree with the Appellate Court of Illinois' conclusion regarding language approximating the instant Policy: "[A]nyone purchasing the comprehensive coverage offered by this policy would be justified in a belief that any loss[,] except a loss by collision or any other specific exception made in the policy, would be covered by the comprehensive provision." *Reznick*, 4 Ill.Dec. 525, 360 N.E.2d at 464.

### *Issues to Be Decided on Remand*

{11} In their brief on appeal, the Carters request that this Court provide an answer to the fact question of whether they were innocent purchasers of the stolen vehicles. They also ask that the district court be directed to permit certain discovery related to damages alleged in the Carters' counterclaims against Western. These matters are not within the province of this Court, but belong more properly to the judgment and discretion of the district court on remand. *See Torres v. Plastech Corp.*, 1997–NMSC–053, ¶ 26, 124 N.M. 197, 947 P.2d 154 (reviewing court on appeal " 'will not originally determine the questions of fact in a case' ") (quoted authority omitted); *see also Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C.App. 650, 464 S.E.2d 47, 64 (1995) (discovery issues may change in light of remand but remain within sound discretion of the trial court).

{12} Western argues that before remanding to the district court, we should eliminate some or all of the Carters' counterclaims instead of reinstating them in full. For instance, Western contends that it cannot be deemed to have acted in bad faith in denying the Carters' claim because bad faith requires a frivolous or unfounded refusal to pay, *see Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 419, 827 P.2d 118, 134 (1992), whereas Western maintains that the fact that this case heretofore was one of first impression in New Mexico supplies reasonable grounds for its assertion of non-liability. Given our determination that the plain language of the Policy covers the Carters' loss, Western's argument is not persuasive. The district court is in the best position to evaluate the Carters' counterclaims at this juncture, and we will not interfere with its ability to do so.

### *CONCLUSION*

{13} We conclude that, if the Carters were innocent purchasers of the stolen vehicles involved in this case, the insurance policy issued to the Carters by Western covered the loss of those vehicles by repossession. Therefore, the decision of the district court in favor of Western on the coverage issue is reversed and the Carters' counterclaims are reinstated. Initial judgment on the Carters' counterclaims, as well as an answer to the fact question of whether the Carters innocently purchased the stolen vehicles, are properly addressed in the district court on remand, not this Court now.

{14} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, SERNA, and MAES, JJ., concur.