Teresita J. DUMAIS, Plaintiff–Appellee,

v.

AMERICAN GOLF CORPORATION, doing business as Paradise Hills Golf Club, a foreign corporation; and William Winkler, Defendants–Appellants.

No. 01–2224.

United States Court of Appeals, Tenth Circuit.

Aug. 15, 2002.

Martin R. Esquivel of Dines, Gross & Esquivel, P.C., Albuquerque, NM, for Defendants–Appellants.

Christopher M. Moody (Whitney Warner with him on the brief) of Noeding & Moody, P.C., Albuquerque, NM, for Plaintiff–Appellee.

Before EBEL, McKAY, and BRISCOE, Circuit Judges.

McKAY, Circuit Judge.

Appellee Dumais began working at the Paradise Hills Golf Course on May 3, 1996. At that time, Golf Enterprises owned the course. Some two months later, Appellant American Golf assumed ownership of Paradise Hills. American Golf required all employees, including Appellee, to complete new employment applications. On July 25, 1996, Appellee also signed two separate arbitration agreements. One was titled "We Can Work It Out," and the other, the "New Co–Worker Authorization & Acknowledgment Form."

The "We Can Work It Out" agreement required Appellee to bring any claim of unlawful harassment, discrimination, or wrongful discharge arising out of her employment relationship with American Golf exclusively through the process of final and binding arbitration. Appellee also specifically acknowledged that she knowingly and voluntarily waived her rights to pursue these employment claims in court.

The "New Co–Worker Authorization & Acknowledgment Form" bound Appellee to the provisions of American Golf's employment handbook titled "Co–Worker Alliance Handbook." This handbook also contained an agreement to arbitrate employment claims. The parties dispute whether Appellee actually received a copy of the Handbook.

One section of the Handbook declares that American Golf "reserves the right to at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion," with the exceptions of Appellee's employment-at-will status and the arbitration provision. Aple.App. at 58. However, on the page of the Handbook where the employees sign which acknowledges that they read and understood the Handbook's provisions, American Golf reserves the right to amend, supplement, or revise everything in the Handbook with the exception of employees' at-will status. *Id.* at 66. The Handbook also states, "This Co–Worker Alliance is my personal agreement of employment with [American Golf]. I understand that this handbook supersedes any and all prior handbooks." *Id.* at 58.

In July of 1999, Appellee left American Golf's employ. She subsequently filed a

Charge of Discrimination with the EEOC. Then, in February 2000, Appellee filed suit in the United States District Court for the District of New Mexico. In response, Appellants filed a motion to compel arbitration.

The motion to compel arbitration was assigned to a magistrate judge for disposition. On April 25, 2001, the magistrate judge held an evidentiary hearing where he refused to consider two affidavits American Golf wished to enter into evidence concerning the date Appellee began employment with American Golf. On May 20, 2001, the magistrate judge issued his Proposed Findings and Recommended Disposition, which the district court adopted in its June 14, 2001 Order.

The district court found that Appellee commenced employment with American Golf on May 3, 1996, rather than July 31, 1996. The district court held that the arbitration agreement was invalid because it was illusory, lacked mutuality, and was not supported by consideration. Additionally, the district court held that the arbitration agreements did not cover Appellee's infliction of emotional distress or prima facie tort claims against American Golf or any claims brought against Appellant William Winkler. The district court also refused to overturn the magistrate judge's decision to reject American Golf's affidavits.

Appellants timely appealed to this court. Appellants challenge the district court's finding regarding Appellee's beginning date of employment, the district court's decision not to allow American Golf's affidavits into evidence, and the district court's holdings that the agreement to arbitrate was illusory, lacked mutuality, was not supported by consideration, and did not cover Appellee's claims for infliction of emotional distress, prima facie tort, or any claims against Mr. Winkler.

■ Because it is immaterial to our resolution of this appeal, we need not review whether the district court's finding regarding the date Appellee commenced employment with American Golf was clearly erroneous. Instead, we begin our review of the district court's Order by considering whether it correctly held that the arbitration agreement between American Golf and Appellee was illusory. We review the denial of a motion to compel arbitration de novo and employ the same legal standard employed by the district court. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 796 (10th Cir.1995).

The district court held that the arbitration agreement was illusory because the Handbook contains two conflicting provisions. One provision allows American Golf to unilaterally alter, modify, change, etc., any provision of the Handbook except Appellee's employment-at-will status and the arbitration agreement. A second provision permits American Golf to unilaterally alter, modify, change, etc., any provision of the Handbook except Appellee's employment-at-will status. This rendered American Golf's contract with Appellee ambiguous because "[t]he inconsistent provisions ... are reasonably and fairly susceptible to different constructions." Aplt.App. at 323.

Construing the Handbook against the drafter (American Golf), the district court held that the conflicting provisions allowed American Golf to change the arbitration provision at will. "[T]he agreement binds [Appellee] to arbitration but allows [American Golf] free rein to renege. This lopsided agreement is illusory because it allows [American Golf] to unilaterally modify the terms at any time." *Id.*

■ The parties' respective positions in this litigation are unusual because they represent the opposite of what typically occurs. Essentially, Appellee is arguing

that the Handbook gives American Golf increased power to modify (all provisions except employment-at-will status), and American Golf is arguing that its power to modify is more circumscribed (cannot modify employment-at-will or arbitration provisions). Typically, the roles would be reversed—American Golf would argue that it has increased power to modify and Appellee would argue that American Golf's right to modify was more limited.

■ We recognize the well-accepted rule that ambiguities in contracts are construed against the drafter. *See, e.g., Western Farm Bureau v. Carter*, 127 N.M. 186, 979 P.2d 231, 232 (1999). In the unusual posture of this case, the issue becomes whether we construe the ambiguity against the drafter generally or within the confines of the particular litigation before us. If construed generally against American Golf, the ambiguity would prohibit American Golf from modifying the arbitration agreement. If we construe the ambiguity against American Golf within the specific confines of this dispute, the ambiguity would permit modification of the arbitration agreement because such a construction would enable Appellee to avoid arbitration.

The better course is to construe ambiguities against the drafter as dictated by the confines of the specific litigation before us. The contract at issue is a form contract effectively written by American Golf without Appellee's input or any negotiation with her. The power American Golf enjoyed in constructing the Handbook in the manner it preferred justifiably includes the burden of the document's shortcomings in each instance. Accordingly, we interpret the ambiguity created by the Handbook's conflicting provisions as allowing American Golf to change the arbitration provision at will.

■ We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory. *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir.2000) (ability to choose nature of forum and alter arbitration without notice or consent renders arbitration agreement illusory); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (among other reasons, employer's ability to modify rules "in whole or in part" without notice to employee renders arbitration agreement illusory); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir.1997) (Cudahy, J., concurring) (handbook provision allowing employer to change arbitration agreement at will renders agreement illusory). Nevertheless, American Golf maintains that two additional arguments favor upholding the arbitration agreement.

■ American Golf argues that the district court relied too heavily on the Handbook and did not give sufficient weight to the separate "We Can Work It Out" agreement, which both parties signed. However, the Handbook specifically states that it is the contract of employment between American Golf and Appellee. Accordingly, the Handbook controls over any other document the parties signed.

■ American Golf next argues that the strong presumption favoring arbitration requires us to ignore the contract's illusory nature. *See, e.g., Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 ("liberal federal policy favoring arbitration agreements") (quotation omitted); *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir.1998) ("strong federal policy favoring arbitration," and "all doubts must be resolved in favor of arbitrability") (citations omitted). American Golf's position improperly conflates two separate inquiries-the existence of a valid arbitration agreement and the

interpretation of a valid arbitration agreement's scope. The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. ˙938, 944–45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998) ("[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away.") (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Because we hold that the agreement between American Golf and Appellee to arbitrate is illusory, the presumption in favor of arbitration is inapplicable.

In sum, we hold that the alleged agreement between American Golf and Appellee to arbitrate their employment disputes is illusory. Accordingly, there is no need to address the factual issue of when Appellee began employment with American Golf, whether the district court erred in refusing to consider American Golf's affidavits, whether the arbitration agreement between American Golf and Appellee lacks mutuality and consideration, or whether the arbitration agreement covers all of the claims Appellee raised. Accordingly, we express no views as to these issues.

We **AFFIRM** the district court's denial of Appellants' motion to compel arbitration.