# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***State Farm Mutual Automobile Insurance Co. v. Rodriguez*, 2013 IL App (1st) 121388**

---

| | |
|---|---|
| Appellate Court Caption | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, v. HERIBERTO RODRIGUEZ, Defendant-Appellant.–STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, v. RAUL DIAZ, RAMIRO VICTORIANO, JOSEFINA ALVAREZ, and LEONEL ALVAREZ, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-1388, 1-12-1390 cons. |
| Filed | March 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although defendants were good-faith purchasers of the automobiles they insured with plaintiff and they had insurable interests in those vehicles, they did not suffer a "loss" when the cars were seized by law enforcement authorities as stolen vehicles, since the seizures did not constitute "damage to" the vehicles that amounted to a "loss" under the comprehensive coverage provisions of the policies, and the fact that rental coverage was provided and extended to one insured while his claim was being investigated did not waive the insurer's right to deny coverage. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 11-CH-20209, 10-CH-30718; the Hon. Mary L. Mikva and the Hon. Peter Flynn, Judges, presiding. |
| Judgment | No. 1-12-1388, Affirmed.<br>No. 1-12-1390, Affirmed. |

| Counsel on Appeal | Joseph A. Bosco and Andrew D. Bell, both of LaRose & Bosco, Ltd., of Chicago, for appellants. |
|---|---|
| | Kristin L. Ward and Frank C. Stevens, both of Taylor Miller, LLC, of Chicago, for appellee. |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Justice Fitzgerald Smith concurred in the judgment and opinion. Justice Pucinski specially concurred, with opinion. |

## OPINION

¶ 1    State Farm Mutual Automobile Insurance Company (State Farm) issued automobile insurance policies to the defendants. During the term of the insurance policies, the defendants' automobiles were seized by law enforcement authorities as stolen vehicles. The trial courts in two separate declaratory judgment actions granted summary judgment in favor of State Farm, ruling that its policy provides no comprehensive coverage for the seized vehicles.

¶ 2    In this consolidated appeal, the defendants contend that the trial courts erred in granting summary judgment to State Farm. For the reasons stated herein, we affirm.

¶ 3                          BACKGROUND

¶ 4    State Farm issued automobile insurance policies to each of the defendants: Heriberto Rodriguez; Raul Diaz; Ramiro Victoriano; and Leonel and Josefina Alvarez. Although the facts pertinent to each defendant differ slightly, certain facts are common to all of the defendants. First, there is no dispute that the defendants' State Farm policies were in force at the time of the events in question. Second, each defendant purchased an automobile from a private individual. Third, following such purchases, all of the automobiles were seized by law enforcement on the grounds that they previously had been stolen. Fourth, the defendants did not steal the automobiles and were not aware that the vehicles were stolen at the time they were purchased.

¶ 5    Following the seizure of their automobiles, each of the defendants made claims for comprehensive coverage on their State Farm policies. With respect to Diaz only, State Farm provided rental car coverage, which was extended twice, while his claim was being investigated. State Farm ultimately denied Diaz's claim, as well as the claims of the other defendants. After the denials, State Farm filed two declaratory judgment actions in the circuit court of Cook County, seeking declaration that there was no comprehensive coverage

available to the defendants.[1]

¶ 6     The parties filed cross-motions for summary judgment. Judge Peter Flynn heard the motions concerning defendants Diaz, Victoriano, and Josefina and Leonal Alvarez. The court granted State Farm's summary judgment motion and denied the defendants' summary judgment motion. In its order ruling on the summary judgment motions, the court "declare[d] that the seizure of the insured vehicles by law enforcement authorities on the ground that they were stolen is not a 'loss' as defined in the comprehensive coverage" of the defendants' policies. Judge Mary Mikva granted State Farm's summary judgment motion and denied defendant Rodriguez's summary judgment motion.

¶ 7     The defendants appealed their respective orders; the appeals are consolidated herein.

¶ 8     ANALYSIS

¶ 9     The policy[2] provides in pertinent part as follows:

"**PHYSICAL DAMAGE COVERAGES**

* * *

**Insuring Agreements**

**1. Comprehensive Coverage**

*We* will pay:

a. for *loss*, except *loss caused by collision*, to a *covered vehicle*[.]" (Emphasis in original.)

The policy defines "loss," in relevant part, as follows:

"*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*." (Emphasis in original.)

¶ 10     Defendants raise a number of arguments on appeal. The defendants contend that they have an insurable interest in the vehicles, given that they were good-faith purchasers. The defendants then argue that because the term "damage" is undefined in the policy, the court must look to its dictionary definition. The defendants urged the trial courts to use the Black's Law Dictionary definitions of "damage"–"loss or injury to person or property"–and "loss": "the disappearance or diminution of value, usually in an unexpected or relatively unpredictable way." Noting that State Farm presented no "counter-definition" at the trial

---

[1]Another defendant, Valerie Jimenez, was dismissed from the complaint because Jimenez withdrew her insurance claim against State Farm.

[2]Although other aspects of the policy–*i.e.*, the declarations page–differ for the defendants, the "State Farm Car Policy Booklet" (Policy Form 9813B) included in each policy is the same. For purposes of our analysis, we will sometimes refer to a single "policy," meaning the policy booklet common to all of the defendants' policies.

court level, the defendants contend that State Farm's primary argument–that only damage to the vehicle, rather than damage to the defendants, may be considered "damage" under the policy–is, at best, a second "reasonable interpretation[ ]" of the policy language. Given that "all ambiguities in an insurance contract will be construed against the insurance company," the defendants argue that the trial court erred in finding in State Farm's favor. Finally, the defendants contend that State Farm's extension of rental coverage to one of the defendants is "further evidence that the policy language is ambiguous."

¶ 11    State Farm and the defendants agree regarding the applicable standard of review. Because the parties filed cross-motions for summary judgment, they conceded the absence of a genuine issue of material fact and invited the court to decide the question presented as a matter of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). In appeals from summary judgment rulings, we conduct a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 12                              Insurable Interest

¶ 13    The defendants contend that, based on the holding in *Reznick v. Home Insurance Co.*, 45 Ill. App. 3d 1058, 1060 (1977), the good-faith purchaser of an automobile that later was determined to be a stolen vehicle has an insurable interest in the vehicle. The court in *Reznick* stated that " '[g]enerally speaking, a person has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction.' " *Reznick*, 45 Ill. App. 3d at 1061 (quoting 3 Ronald A. Anderson, Couch Cyclopedia of Insurance Law § 24:13 (2d ed. 1960)). Because they each were "financially and practically disadvantaged by the loss of the vehicle," the defendants assert that they satisfy the *Reznick* definition of insurable interest, as long as they were "good faith purchasers." See *Reznick*, 45 Ill. App. 3d at 1061.

¶ 14    State Farm concedes that the defendants were good-faith purchasers of their vehicles and have insurable interests. However, State Farm argues–and we agree–that this concession is irrelevant to the issue of whether its policy provided coverage for the seizure of the vehicles. The *Reznick* court held that it first needed to determine whether a good-faith purchaser of a stolen vehicle had an insurable interest in the vehicle because it could decide "whether this type of loss"–*i.e.*, seizure by law enforcement–"was covered by the comprehensive coverage provisions of the insurance agreement." *Id.* at 1062. Therefore, we turn our focus to the issue of whether defendants sustained a "loss" according to the terms of State Farm's policy.

¶ 15                          "Loss" Under the Policy

¶ 16    The policy provides physical damage coverage for "loss *** to a covered vehicle." The policy defines "loss" as "direct, sudden, and accidental damage to" or "total or partial theft of" a "covered vehicle." The parties agree that seizure of the vehicles by law enforcement authorities does not constitute "total or partial theft of" the vehicles. The critical question is whether the seizure constitutes "direct, sudden, and accidental damage to *** a covered vehicle."

¶ 17    "An insurance policy is a contract, and the general rules governing the interpretation of

-4-

other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Our primary objective is to "ascertain and give effect to the intention of the parties as expressed in the agreement." *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416 (2006).

¶ 18   If the insurance policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy. *Hobbs*, 214 Ill. 2d at 17. Whether an ambiguity exists "turns on whether the policy language is subject to more than one reasonable interpretation." *Id.* "That a term is not defined by the policy does not render it ambiguous, nor is a policy term considered ambiguous merely because the parties can suggest creative possibilities for its meaning." *Nicor*, 223 Ill. 2d at 417.

¶ 19   Where a term in an insurance policy is not defined, "we afford that term its plain, ordinary and popular meaning, *i.e.*, we look to its dictionary definition." *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010). See also *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 366 (2006) (noting that courts have looked to their dictionary definitions to afford terms their "plain, ordinary, and popular meanings"); *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005) (stating that undefined terms will be given their "plain, ordinary and popular meaning, *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person"); *Czapski v. Maher*, 2011 IL App (1st) 100948, ¶ 29 ("Illinois courts have generally utilized dictionaries to determine the meaning of undefined terms in many contexts.").

¶ 20   The defendants note that the policy does not include a definition of "damage." They look to the Black's Law Dictionary definition of "damage": "[l]oss or injury to person or property." Black's Law Dictionary 445 (9th ed. 2009). "Loss" being undefined within the Black's definition of "damage," the defendants use the dictionary's definition of "loss": "the disappearance or diminution of value, usu. in an unexpected or relatively unpredictable way," or injury to person or property. Black's Law Dictionary 1029 (9th ed. 2009). Defendants argue that because the vehicles "disappeared without warning and in an unexpected or relatively unpredictable way," the seizure of each vehicle qualifies as "damage" under the policy. Furthermore, according to the defendants, the reduction of the value of the vehicles to zero–as defendants no longer may use, sell or derive any other value from the vehicles–constitutes "damage" under the policy.

¶ 21   We agree with State Farm that a policy term is not ambiguous simply "because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning." *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 529 (1995). The policy provides that there is a "loss" if there was "direct, sudden and accidental damage *to* \*\*\* a covered vehicle." (Emphasis added.) According to the defendants, inserting the Black's Law Dictionary definition of "damage" into the policy's definition of loss results in the following definition of "loss":

"***Loss*** means:

   1. direct, sudden, and accidental *disappearance or diminution of value, usually in an unexpected or relatively unpredictable way* [(emphasis added)] to; or

   2. total or partial theft of

-5-

a ***covered vehicle***." (Emphasis in original.)

We do not view the foregoing language as a reasonable interpretation of the policy terms. First, we note that the defendants' proposed definition is essentially the insertion of the Black's definition of "loss" into the Black's definition of "damage" into the policy definition of "loss." Even if the definition suggested by the defendants was not unduly strained, we believe that the "disappearance or diminution in value *** *to*" a vehicle–as opposed to "disappearance or diminution in value *** *of*" a vehicle–is an "absurd result" we are compelled to avoid. See *Bond County Community School District No. 2 v. Indiana Insurance Co.*, 269 Ill. App. 3d 488, 499 (1995). We share the view of the trial courts that although the seizure of the vehicles does constitute damage to the defendants, it does not constitute damage "to" the covered vehicles. The defendants have not claimed that the seizure resulted in physical damage to the vehicles. The defendants have failed to suggest any reasonable interpretation of the term "damage" under which their vehicles, as opposed to the defendants themselves, have been damaged.

¶ 22 The defendants dismiss State Farm's reliance on the word "to" in the policy definition of "loss" as a "hyper-technical grammatical argument" that represents a "ridiculous attempt to elevate form over substance." We disagree. An insurance policy must not be interpreted in a manner that renders contract provisions meaningless. *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775, 789 (2010). Although we acknowledge the harsh result of the seizures on the innocent purchaser defendants herein, we cannot ignore or modify the preposition "to" in the "loss" definition and transfer their burdens to parties that did not contract to insure this risk. As noted by Judge Mikva below," it is completely unfair and completely unfortunate that the difference in preposition should make *** a multi thousand dollar difference to your client." Judge Flynn similarly observed that "[t]his entire case turns *** on the lack of a preposition."

¶ 23 The trial courts each discussed two cases addressing situations similar to these cases: *Reznick v. Home Insurance Co.*, 45 Ill. App. 3d 1058 (1977), and *Cueto v. Allstate Insurance Co.*, 544 A.2d 906 (N.J. Super. Ct. Law Div. 1987). In *Reznick*, this court addressed whether the comprehensive coverage provision of the plaintiff's automobile insurance policy covered loss of a vehicle caused by confiscation due to the fact that the vehicle had been stolen when the insured was a good-faith purchaser. *Reznick*, 45 Ill. App. 3d at 1059. After determining that there was an "insurable interest" in the vehicle, the court considered the definition of "loss" in the policy: " 'direct and accidental *loss of* or damage to *** the automobile.' " (Emphasis added.) *Id.* at 1062. The court concluded that this language covered the police confiscation of the vehicle. *Id.* at 1062-63. In *Cueto*, a New Jersey court found that the police confiscation of a stolen vehicle was not a "risk" within the expectation of the vehicle purchaser and therefore the purchaser was not entitled to recover under his comprehensive coverage policy for loss of the vehicle. *Cueto*, 544 A.2d at 909. The court also analyzed the following automobile insurance policy language: " 'We will pay for direct and accidental *loss to* your covered auto ***.' " (Emphasis added.) *Cueto*, 544 A.2d at 908. Distinguishing the *Reznick* policy language about loss *of* or damage *to* a vehicle, the *Cueto* court concluded that there was no "loss to" the covered vehicle. *Id.* at 909.

¶ 24 At the hearing on the summary judgment motions, Judge Mikva stated that Illinois law

"clearly recognizes" that defendant Rodriguez had an insurable interest and that she was "not that persuaded" by *Cueto* in light of "well-settled" Illinois law that "a differently worded comprehensive coverage would cover this kind of *** seizure of a car by law enforcement." The court then noted that "I just do not believe that there is any way to view the policy language as ambiguous on this point." Judge Flynn similarly noted that "[i]f the policy had referred to loss 'of' the vehicle, like the Resnick policy, then we have Resnick as authority *** for policy coverage *** [b]ut the 'of' isn't in there."

¶ 25    For the first time in their reply brief, the defendants argue that *Cueto* is "not the only out of circuit case on point," citing a Texas court of appeals decision, *State Farm Mutual Automobile Insurance Co. v. Kelly*, 945 S.W.2d 905 (Tex. Ct. App. 1997), *abrogated on other grounds by Don's Building Supply, Inc. v. OneBeacon Insurance Co.*, 267 S.W.3d 20 (Tex. 2008). The defendants argue that *Kelly* "supports a finding that the applicable policy language is ambiguous." "It is axiomatic that arguments raised for the first time in a reply brief are waived." *Salerno v. Innovative Surveillance Technology, Inc.*, 402 Ill. App. 3d 490, 502 (2010). However, even if we were to consider the defendants' argument, we do not share their view regarding the significance of *Kelly*. The *Kelly* court addressed whether the confiscation of a stolen vehicle by state authorities constituted an " 'accidental loss' " under the applicable insurance policy. *Kelly*, 945 S.W.2d at 906. After concluding that there was an insurable loss, the court considered the policy language. According to the court, State Farm had agreed to " 'pay for direct and accidental loss' to the insured's 'covered auto.' " (Emphasis omitted.) *Id.* at 907. Analyzing whether the confiscation was an "accidental loss," the court concluded that "confiscation is not the natural and probable result of the good faith purchase of an automobile" and, "[o]n this record," the confiscation constituted an accidental loss under the terms of the policy. *Id.* at 909-10.

¶ 26    We disagree with the defendants' contention that the *Kelly* decision supports a finding that the applicable policy language is ambiguous. First, the fact that a State Farm policy is at issue both in *Kelly* and the instant cases is not relevant. Even if issued by the same insurer, they are different policies issued in different jurisdictions more than 15 years apart. Second, the language at issue in *Kelly* is distinguishable from the challenged language in these cases. The *Kelly* court stated that "[u]nder Mr. Kelly's insurance policy, State Farm agrees to 'pay for direct and accidental loss' to the insured's '*covered auto*.' " (Emphasis in original). *Id.* at 907. Even assuming *arguendo* that the policy actually used the word "to,"[3] the *Kelly* court did not analyze whether there was "damage to" a vehicle. As discussed above, we do not believe that the seizure of the defendants' vehicles can constitute "damage" to the vehicles. Third, we note that the *Kelly* court focused primarily on the meaning of "covered auto" and "accidental loss" under the policy; there is no substantive discussion addressing the significance of the word "to."

¶ 27    The defendants further contend that if we "give merit to State Farm's unsupported assertion that damage to the *owner* of a vehicle does not constitute damage *to* the vehicle, then this court has been presented with two reasonable interpretations of the applicable

---

[3]The word "to" is not included with the policy language directly quoted by the *Kelly* court.

policy language." (Emphases in original.) We again disagree because we do not view the defendants' interpretation as reasonable. We do not see any ambiguity in the policy merely because there is a disagreement between State Farm and the defendants regarding its meaning. See *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004) (noting that a contract is not rendered ambiguous merely because the parties disagree about its meaning).

¶ 28    If there is an ambiguity in an insurance policy, we will construe it in favor of the insured. *Hobbs*, 214 Ill. 2d at 30-31. Because we conclude that the challenged language is not ambiguous, we need not consider the defendants' argument that the term should be construed in their favor and against State Farm, the insurer that drafted the policy.

¶ 29    Finally, the defendants raise a public policy argument for the first time in their reply brief, contending that "denying these families the insurance coverage they paid for, for the vehicles they possessed and utilized for years would be an inequitable result" and is against the principles of the "court of equity in which the instant matters were initially decided." We again note that arguments raised for the first time in a reply brief are waived. *Salerno*, 402 Ill. App. 3d at 502. However, even if we consider the defendants' public policy argument, we cannot agree with their position. While we acknowledge that the result in the trial courts is unfortunate for the defendants, we do not deem it inequitable. Indeed, if, as we have found, State Farm did not contract to cover this type of claim it would be inequitable to place loss on it because of sympathy for the victimized innocent purchasers of stolen vehicles. "If insurance policy terms are clear and unambiguous, they must be enforced as written unless doing so would violate public policy." *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 400 (2010). The public policy of Illinois is "reflected in its constitution, statutes, and judicial decisions." *Id.* The defendants have not cited–and we are not aware of–any constitutional, statutory or judicial basis under Illinois law for not enforcing this policy in accordance with its clear and unambiguous terms.

¶ 30    In summary, we conclude that under the unambiguous language of the policy, the seizure of each defendant's vehicle did not constitute damage to the vehicle and thus the defendants did not sustain an insurable "loss" under the policy. Although we are sympathetic to the defendants' position, we will not " 'torture ordinary words until they confess to ambiguity.' " *Hobbs*, 214 Ill. 2d at 31 (quoting *Western States Insurance Co. v. Wisconsin Wholesale Tire, Inc.*, 184 F.3d 699, 702 (7th Cir. 1999).

¶ 31                          Rental Car Coverage for Diaz

¶ 32    The Du Page County Auto Theft Task Force seized defendant Raul Diaz's vehicle on May 17, 2010. After the seizure, Diaz made a claim under his State Farm policy. While the claim was being investigated, State Farm provided rental coverage to Diaz on May 26, 2010 and extended it on June 4, 2010 and June 11, 2010. State Farm issued a rental coverage letter on May 26, 2010, which, according to the defendants, "may only be offered when a covered

vehicle is unavailable as the result of a 'loss' under the policy."[4] State Farm ultimately denied Diaz's claim and filed the declaratory judgment action being appealed herein.

¶ 33     According to the defendants, the State Farm's agent's treatment of Diaz's claim after the seizure of his vehicle "supports a finding that the policies are ambiguous." The defendants contend that State Farm's filing of its declaratory judgment action after the provision and extension of rental car coverage–"a benefit on Mr. Diaz that could only be had if the seizure should be deemed a loss under the policy"–evidences a "clear inconsistency." Given that ambiguities in an insurance policy are construed against the insurer, the defendants argue that the "policy language is ambiguous and should be interpreted in favor of the defendants being compensated under the policy for their loss."

¶ 34     State Farm responds that because the policy is a fully integrated document–*i.e.*, it constitutes the entire agreement between the parties–the "four corners" or parol evidence rule "generally prohibits the use of extrinsic evidence to contradict or vary the terms of a written contract." The insurer contends that "[b]ecause extrinsic evidence cannot be used to interpret the policy, it cannot be used to manufacture an ambiguity." Conceding that the State Farm claims representative "simply made a mistake when deciding to pay car rental benefits to Diaz," State Farm argues that the "mistake sheds no light on the meaning of the policy, or whether it is ambiguous."

¶ 35     Our supreme court in *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457 (1999), addressed the question of whether extrinsic evidence may be "provisionally admitted to show that an explicitly integrated, facially clear, and complete written contract is actually ambiguous." *Id.* at 459. The court first observed that if the contract language is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence. *Id.* at 462. However, under the "provisional admission approach," applied by the Illinois Appellate Court in a variety of cases, "although the language of a contract is facially unambiguous, a party may still proffer parol evidence to the trial judge for the purpose of showing that an ambiguity exists which can be found only by looking beyond the clear language of the contract." *Id.* at 463. The supreme court declined to adopt the provisional admission approach because the contract at issue contained an express integration clause. *Id.* at 464. The court noted that "where parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence." *Id.*

¶ 36     The State Farm policy at issue provides, in part:

"2. This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and all applicants and:

a. *us*; and

b. any of *our* agents." (Emphasis in original.)

---

[4]We note that the final line of the letter is underlined and states as follows: "This letter provides you with only a general explanation of available benefits and does not grant any insurance coverage. Please refer to your State Farm Car Policy for the terms and conditions of coverage."

We have determined that the policy terms are facially unambiguous, and we choose not to effectively nullify the foregoing integration clause in an attempt to find a latent ambiguity in the policy terms. "[E]xtrinsic evidence is admissible to explain the meaning of words in a contract only when there is an ambiguity or the words are susceptible of different interpretations." *Lee v. Allstate Life Insurance Co.*, 361 Ill. App. 3d 970, 979 (2005). See also *Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill. App. 3d 678, 686 (2009) (concluding that "trial courts erred in allowing the presentation of parol evidence prior to finding that the contract language was ambiguous").

¶ 37    State Farm also contends that partial payment under a policy does not waive an insurer's right to later deny a claim. Specifically, the State Farm claims representative explained to Diaz, through his English-speaking daughter, that although rental coverage was being extended, it was done so provisionally, as State Farm's investigation of the claim was pending. State Farm argues that, as evidenced by this conversation, the insurer "expressly did not relinquish its right to refuse the claim, but instead expressly invoked its right of denial." The defendants counter that the rental car coverage was not offered as evidence of waiver but "rather as evidence that a reasonable interpretation of the insurance policy language supports defendants' claim; even State Farm's own employee read the State Farm policy as providing Mr. Diaz with relief."

¶ 38    Judge Flynn specifically addressed this argument during the hearing on the summary judgment motions:

"I don't particularly care whether the claims agent says this is covered or not covered, so long as we're not talking about a bad-faith claim, because the claims agent can't tell me what the law is. That's my job. And if the claims agent came into court and said, I really think this claim is covered, my response would be, So what?

You can't use the claims agent then to create an ambiguity in something which otherwise is not ambiguous any more than the fact that a particular contracting party has a really quirky reading of the contract term that would warrant a Court in concluding that the contract term is ambiguous, even though everybody except that particular contracting party would read it one way."

We agree that the claims agent's extension of rental car coverage to Diaz–regardless of whether such coverage was presented as "provisional"–does not evidence an ambiguity in the policy, and we will not interpret the claims agent's actions to create an ambiguity where it does not otherwise exist.

¶ 39                                  CONCLUSION

¶ 40    The trial courts correctly concluded that the seizure of the defendants' stolen vehicles did not constitute "damage to" the vehicles and therefore was not a "loss" for purposes of comprehensive coverage under their State Farm automobile insurance policies. The extension of rental car coverage to defendant Diaz does not affect such conclusion. The trial courts did not err in granting State Farm's motions for summary judgment in its declaratory judgment actions and denying the summary judgment motions of the defendants.

¶ 41    No. 1-12-1388, Affirmed.

¶ 42    No. 1-12-1390, Affirmed.


¶ 43    JUSTICE PUCINSKI, specially concurring.

¶ 44    I agree with my colleagues in their decision to affirm the judgment of the trial court, however, I would point to one additional clause in the "Diaz" insurance policy, under "Physical Damage Coverage" (pages 27 to 33 of the policy) and further under "Exclusions" (page 31 of the policy) the policy specifically states:

> "**Exclusions**
>
> THERE IS NO COVERAGE FOR:
>
> * * *
>
> 9. ***LOSS*** *TO ANY* ***COVERED VEHICLE*** THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT ***COVERED VEHICLE*** BY ANY GOVERNMENTAL AUTHORITY."

In the case of Diaz, the policy is clear. The vehicle was a covered vehicle, it was seized by a governmental authority, and coverage is excluded.