**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

HAMID ANSARI; BROADBAND
UTILITY RESOURCES, L.P.,

        Plaintiffs - Appellees,

    v.

QWEST COMMUNICATIONS
CORPORATION,

        Defendant - Appellant.

No. 04-1262

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 03-D-2096 (PAC))

---

Submitted on the briefs:

Bobbee J. Musgrave, Steven J. Perfrement, and Paul J. Lopach, Musgrave &
Theis, LLP, Denver, Colorado, for Defendant-Appellant.

K.C. Groves, Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colorado, and
James G. Rizzo and James E. Smith, McDermott Will & Emery LLP, Washington,
D.C., for Plaintiffs-Appellees.

---

Before **LUCERO, McKAY**, and **ANDERSON**, Circuit Judges.

---

**McKAY**, Circuit Judge.

Plaintiffs Hamid Ansari and Broadband Utility Resources, L.P. (BUR) filed suit in Colorado district court against defendant Qwest Communications Corp. alleging several claims. Qwest petitioned to compel arbitration in Colorado based on the parties' agreement that disputes would be settled by arbitration. The district court denied the petition, concluding that it had no authority to compel arbitration in Colorado, because the parties had agreed that Washington, D.C. would be the arbitration forum. Also, the court concluded it had no authority to compel arbitration in Washington, D.C. Qwest appeals.

This appeal presents the following issue of first impression in this circuit: Whether § 4 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, prohibited the Colorado district court from compelling arbitration in Colorado when the parties' contractual agreement designated Washington, D.C. as the arbitration forum. Like the district court, we conclude that § 4 did prohibit the district court from compelling arbitration in either Colorado or Washington, D.C. Accordingly, we affirm the district court's order denying arbitration. [1]

---

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

BACKGROUND

In their complaint, plaintiffs asserted the following facts. In mid-June 2001, Qwest and BUR orally agreed that BUR would purchase an Indefeasible Right of Use (IRU) [2] for certain long-distance telecommunications services from Qwest for $20,092,520 conditioned upon Qwest's purchase of equipment from Mr. Ansari's then-employer Sonus Networks, Inc. Qwest refused to memorialize the terms of both agreements in a single contract. On June 28, 2001, Qwest and BUR signed the IRU Agreement, and BUR made an initial payment of $5,023,130. Also, at that time, Mr. Ansari pledged his personal Sonus Networks stock valued at $15,963,547 as collateral for the balance due on the IRU Agreement.

The IRU Agreement gave BUR the exclusive right to use a specified portion of a telecommunications cable owned by Qwest, specifically the exclusive right to use eight circuits of specified capacity over five defined routes for their

---

[2]

> An IRU is an exclusive, long-term lease, granted by an entity holding legal title to a telecommunications cable or network, of a specified portion of a telecommunications cable, such as specified fiber optic strands within an optical fiber cable, or the telecommunications capacity of a cable or network, such as specific channels of a given bandwidth.

Aplt. App. at 14; *see also id.* at 44 (IRU Agreement's definition of IRU).

entire economically useful life. Aplt. Br. at 3-4. The IRU Agreement also contained an arbitration provision. This provision stated that any dispute between Qwest and BUR concerning the IRU Agreement shall be settled by arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association. [3]

Despite this arbitration provision, plaintiffs filed suit against Qwest in Colorado district court alleging several claims for relief: (1) fraud in the inducement; (2) breach of an implied covenant of good faith and fair dealing; (3) breach of warranty; (4) rescission; (5) unjust enrichment; (6) fraud; and (7) violation of §§ 201(a), 201(b), 202(a) and 271 of the Communications Act of 1934, 47 U.S.C. §§ 151-615b. They asserted that federal law barred Qwest from providing some of the circuit capacity identified in the IRU Agreement and that Qwest induced BUR to execute the IRU Agreement by entering into a

---

[3]The arbitration provision stated in relevant part:

> Any dispute or disagreement arising between Qwest and Customer in connection with this Agreement which is not settled to the mutual satisfaction of Qwest and Customer within thirty (30) days from the date that either party informs the other in writing that such dispute or disagreement exists, shall be settled by arbitration in Washington, D.C. in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date that such notice is given.

Aplt. App. at 55.

-4-

contemporaneous equipment purchase agreement with Sonus Networks that Qwest never intended to honor.

In response to the complaint, Qwest filed a petition to compel arbitration in Colorado under 9 U.S.C. § 4 based on the arbitration clause in the IRU Agreement. Qwest asserted that because plaintiffs initiated this action in Colorado, arbitration was proper in Colorado, even though the arbitration clause of the IRU Agreement stated arbitration was to be held in Washington, D.C. Plaintiffs opposed the petition. The magistrate judge recommended that the petition be denied, because the district court lacked "power to compel arbitration in any district because the arbitration provision requires that arbitration occur in a forum outside the district." Aplt. App. at 160; *see also id.* at 162 (recommending petition to compel arbitration be denied because court lacked authority to order arbitration in Colorado or Washington, D.C.). Accordingly, the magistrate judge recommended that the district court adopt the position "that if an arbitration agreement contains a forum selection clause only the district court in that forum can issue an order compelling arbitration under Section 4 of the FAA." *Id.* at 160 (citing cases). Additionally, the magistrate judge recommended that the district court stay proceedings pending a determination in the District of Columbia whether some or all of plaintiffs' claims are arbitrable.

Reviewing de novo, the district court adopted the magistrate judge's recommendation. *Id.* at 188. The court denied the petition to compel arbitration, ordered that any arguments regarding arbitrability of plaintiffs' claims be decided by the district court in the District of Columbia if Qwest files a petition to compel arbitration there, [4] and stayed the action pending a determination by the District of Columbia district court on the arbitrability of the claims and the outcome of any arbitration proceeding.

## JURISDICTION

Before addressing the merits, we must consider whether we have jurisdiction to consider this appeal. Plaintiffs argue that this court lacks jurisdiction because the district court did not rule on the merits of Qwest's petition to compel arbitration and instead denied the petition after holding that it lacked authority to rule on the petition. The FAA, however, makes no such distinction. It expressly permits an appeal from a district court's order "denying a petition under section 4 . . . to order arbitration to proceed." 9 U.S.C. § 16(a)(1)(B).

In interpreting this plain language, other courts have held, contrary to plaintiffs' assertion, that § 16(a)(1)(B) does not require a final determination of

---

[4]Qwest has not yet filed a petition to compel arbitration in the District of Columbia district court.

the merits of a petition to compel arbitration. *See, e.g.*, *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 592 (3d Cir. 2004) (holding all orders declining to compel arbitration are reviewable under § 16(a)), *cert. denied*, 125 S. Ct. 863 (2005); *Madol v. Dan Nelson Auto. Group*, 372 F.3d 997, 998-99 (8th Cir. 2004) (permitting immediate appeal where district court reopened discovery and rejected magistrate judge's recommendation compelling arbitration); *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1355 (Fed. Cir. 2004) (agreeing with "sister circuits that section 16 allows for appeal of orders denying motions to compel arbitration even when the issue of arbitrability has not been finally decided"); *Colon v. R.K. Grace & Co.*, 358 F.3d 1, 4 (1st Cir. 2003) (holding order denying arbitration under FAA is immediately appealable); *Boomer v. AT & T Corp.*, 309 F.3d 404, 411-12 (7th Cir. 2002) (permitting immediate appeal from order denying request for arbitration to proceed, where district court held that further discovery was needed before it could conclusively rule on motion to compel arbitration); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 636 (4th Cir. 2002) (recognizing sister circuits have reached conclusion that plain language of statute gives appellate jurisdiction over appeals from orders denying motions to compel arbitration); *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 103 (3d Cir. 2000) ("treat[ing] all orders declining to compel arbitration as reviewable"); *In re Pisgah Contractors, Inc.*, 117 F.3d 133, 135 (4th Cir. 1997) (recognizing

appellate courts have jurisdiction to consider appeals from interlocutory orders denying motions to compel arbitration). *See generally Spahr v. Secco*, 330 F.3d 1266, 1268 (10th Cir. 2003) (exercising, without specifically addressing, jurisdiction under § 16 when considering district court's order denying arbitration).

Also, § 16(b)'s listing of interlocutory arbitration-related orders that are not immediately appealable shows Congressional intent to permit an immediate appeal of the denial of a petition to compel arbitration. *Boomer*, 309 F.3d at 412; *see also Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (recognizing Congressional intent to permit appeals from orders denying arbitration, but limiting appeals from orders granting arbitration); *Sandvik AB*, 220 F.3d at 104 (recognizing that refusing appeal circumvents FAA's purpose to enforce binding arbitration agreements); *McDermott Int'l, Inc. v. Underwriters at Lloyds Subscribing to Mem. of Ins. No. 104207*, 981 F.2d 744, 746-47 (5th Cir. 1993) (recognizing § 16 promotes liberal FAA policy of favoring arbitration by permitting interlocutory appeals of orders favoring litigation over arbitration).

Accordingly, we conclude the plain language of § 16(a)(1)(B) provides for the immediate appeal of the denial of a petition to compel arbitration. Because the district court here clearly precluded Qwest from proceeding with arbitration in Colorado, we therefore have jurisdiction to consider this appeal.

DISCUSSION

Qwest argues that the district court erred in failing to consider the merits of its petition to compel arbitration and should not have required Qwest to initiate a new action in Washington, D.C. Qwest maintains that the plain language of the FAA, its purpose, and its legislative history direct a conclusion that the district court had the authority to compel arbitration in Colorado despite the language of the arbitration clause providing for arbitration to be held in Washington, D.C.

"We review the denial of a motion to compel arbitration de novo and employ the same legal standard employed by the district court." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1218 (10th Cir. 2002). A petition to compel arbitration is governed by 9 U.S.C. § 4. That section states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4.

-9-

"The starting point in any case involving statutory construction is the language of the statute itself. When the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances." *True Oil Co. v. Commissioner*, 170 F.3d 1294, 1299 (10th Cir. 1999) (quotation omitted). This court looks at the statutory language in the context of the entire statute. *Id.* "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quotations omitted).

In considering the statutory language of § 4, courts have taken three different approaches when deciding whether a district court may compel arbitration when the arbitration agreement states that arbitration shall take place in another district. One court has held that a district court may compel arbitration in the district specified in the arbitration agreement, even though that district is outside its own district. *Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1276, 1278 (5th Cir. 1975) (recognizing Mississippi district court's order directing parties to proceed with arbitration in New Jersey was contrary to express terms of § 4, but finding district court acted correctly where plaintiff sought to avoid arbitration by bringing suit in Mississippi, rather than

contract forum of New Jersey, and defendant sought arbitration under terms of agreement). Neither party to this appeal suggests that this is the correct approach. And we agree. No statutory language supports this approach.

Qwest favors a second approach, permitting the district court to compel arbitration in its own district and ignore the forum specified in the arbitration clause. The Ninth Circuit took this approach in *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 783 (9th Cir. 2001), holding that the FAA "does not require venue in the contractually-designated locale." *See also Cont'l Grain Co. v. Dant & Russell*, 118 F.2d 967, 968-69 (9th Cir. 1941) (focusing on § 4 language that proceedings be held within district where petition for order directing arbitration is filed and noting appellant brought suit in district other than district specified by contract for arbitration and is not in position to complain); *Indian Harbor Ins. Co. v. Global Transp. Sys., Inc.*, 197 F. Supp. 2d 1, 3-4 (S.D.N.Y. 2002) (basing decision on plaintiff's filing suit in New York district court and defendant's seeking to compel arbitration there). In reaching this holding, the Ninth Circuit relied on *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 195 (2000), which held that the venue provisions of §§ 9-11 of the FAA, 9 U.S.C. §§ 9-11,[5] are permissive and allow a motion to confirm, vacate, or modify an

---

[5]Section 9 provides that when the parties have not contractually agreed that a specific court will confirm an arbitration award, "application may be made to
(continued...)

arbitration award to be brought in any district court where venue is proper. The Ninth Circuit decided that the §§ 9-11 venue analysis of *Cortez Byrd Chips* should apply to the FAA as a whole. *Textile Unlimited*, 240 F.3d at 784. The Ninth Circuit therefore held that the § 4 venue provisions are discretionary, not mandatory. *Id.* The court determined that on its face, "§ 4 only confines the *arbitration* to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur." *Id.* at 785.

This approach, however, fails to recognize that there is a difference between § 4 and §§ 9-11. And *Cortez Byrd Chips* specifically addresses §§ 9-11, not § 4. Although § 4 initially states a party "may petition any United States district court which, save for such agreement" has jurisdiction, it later, more narrowly, states "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." Unlike §§ 9-11, which use the permissive language "may," § 4 uses the

---

⁵(...continued)
the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Under § 10(a), "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration" in certain situations. 9 U.S.C. § 10(a). And, under § 11, "the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration." 9 U.S.C. § 11.

mandatory language "shall." Thus, the different sections have different venue provisions. Also, § 4 states that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." The Ninth Circuit ignores this statutory language. That court's approach fails to give effect to all of the § 4 statutory language directing that arbitration be in accordance with the terms of the agreement and that a district court can order arbitration only within its own district. Thus, we must reject this approach that Qwest favors.

Instead, we agree with plaintiffs and the district court that a third approach taken by a majority of courts is the correct approach. This majority view holds that where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4. *See, e.g.*, *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995); *Snyder v. Smith*, 736 F.2d 409, 420 (7th Cir. 1984), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 877 (7th Cir. 1998); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003); *Roe v. Gray*, 165 F. Supp. 2d 1164, 1173 (D. Colo. 2001); *see also Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974) (holding Virgin Islands

-13-

district court could not compel arbitration in New York, forum agreed upon in arbitration clause, and noting restrictive reading of § 4 may preclude it from ordering arbitration in Virgin Islands). In other words, "a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration." *Merrill Lynch*, 49 F.3d at 328. Any other result renders meaningless the § 4 mandate that arbitration and the order compelling arbitration issue from the same district. *Mgmt Recruiters Int'l*, 129 F.3d at 854; *Merrill Lynch*, 49 F.3d at 327.

> The prohibition on extrinsic orders affecting arbitration thus is clear both from the language of § 4 itself, prescribing a geographic nexus between the arbitration and the court issuing an order to compel, and the case law which has interpreted this as a directive to courts to abstain from controlling intervention in arbitration proceedings outside their district. The legislative history of the FAA, albeit sketchy and incomplete, lends additional credence to this view. Describing the § 4 proviso that requires the hearings and the petition to issue from the same district, the Senate Committee on the Judiciary indicated that the statute was intended to require a party seeking to compel arbitration to apply to the proper court. S.Rep. No. 536, 68th Cong., 1st Sess. 3 (1924), cited in *E.C. Ernst, Inc. v. Potlatch Corp.*, 462 F. Supp. 694 (S.D.N.Y. 1978). Section 4 is aimed at streamlining the path toward arbitration and preventing scattered attacks in various judicial fora.

*Merrill Lynch*, 49 F.3d at 329.

Qwest also argues that the district court's order contravenes the legislative intent to remove obstructions to arbitration where the parties have agreed to resolve their disputes by arbitration. The district court, however, did not obstruct

-14-

Qwest's ability to obtain arbitration in the agreed-upon forum of Washington, D.C. Instead, the district court acted in accordance with the FAA's purpose to enforce private agreements, which requires rigorously enforcing agreements to arbitrate. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985); *see also id.* at 631 (recognizing "a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions").

Next, Qwest argues that because plaintiffs chose to file suit in Colorado district court, they waived the forum selection clause in the arbitration section of the IRU Agreement. We do not address waiver in this appeal. It is presumed that the arbitrator will address any allegations concerning waiver. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146 (10th Cir. 1982) (noting that when parties agree to submit dispute to arbitration, it is presumed that arbitrator is authorized to determine all issues of law and fact necessary to resolve disputes); *Bellevue Drug Co. v. Advance PCS*, 333 F. Supp. 2d 318, 324 (E.D. Pa. 2004) (citing cases showing that majority of circuit courts have concluded that waiver issue should be presented to arbitrator in first instance). And nothing before us rebuts that presumption.

Finally, Qwest argues that the district court erred in ordering it to file a motion to compel arbitration in the District of Columbia district court, because a court in that district "may not" have personal jurisdiction over Qwest, Aplt. Br. at 21, and "apparently" would lack personal or subject matter jurisdiction over such a motion, *id.* at 20. Because Qwest failed to raise this argument at any time in the district court, we need not address it. *See Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

The order of the district court is AFFIRMED.