FILED
United States Court of Appeals
Tenth Circuit

August 8, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

MIGUEL SANCHEZ; SHANE
SCHNEIDER; EDDIE HOWARD, on
behalf of themselves and others similarly
situated,

      Plaintiffs - Appellees,

v.

NITRO-LIFT TECHNOLOGIES, L.L.C.,

      Defendant - Appellant.

Nos. 12-7046 and 12-7057

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:12-CV-00128-RAW)**

Kelli M. Masters (Kevin R. Donelson, Jay P. Walters, and Regina M. Marsh, with
her on the briefs) of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma
City, Oklahoma, for Defendant-Appellant.

Mark Hammons of Hammons, Gowens & Hurst, Oklahoma City, Oklahoma, for
Plaintiffs-Appellees.

Before **TYMKOVICH**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

**SEYMOUR**, Circuit Judge.

This appeal involves a dispute concerning the scope of an arbitration clause between Nitro-Lift Technologies, L.L.C. ("Nitro-Lift"), and three of its former employees, Miguel Sanchez, Shane Schneider, and Eddie Howard (collectively, "plaintiffs"). Plaintiffs filed suit against Nitro-Lift, claiming it failed to pay overtime wages in violation of both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Oklahoma Protection of Labor Act ("OPLA"), Okla. Stat. tit. 40, § 165.1 *et seq.* Nitro-Lift appeals from two district court orders denying its motions to dismiss and compel arbitration, or in the alternative to stay the proceeding pending arbitration, arguing plaintiffs' wage disputes fall within the scope of the arbitration clause. We reverse.

**I**

Nitro-Lift is a Louisiana corporation that services oil rigs across the nation, including in the state of Oklahoma. Nitro-Lift hired plaintiffs to work in and around Johnston County, Oklahoma, where it has an office. Mr. Schneider worked for Nitro-Lift from July 31, 2008, to June 11, 2010; Mr. Sanchez from approximately December 2009 until February 27, 2012; and Mr. Howard from approximately August 2008 until the end of May 2012. Their job duties included connecting nitrogen generator units to oil rigs to allow nitrogen to be pumped into the rigs, and monitoring the oil rigs to determine if and how much oil or natural gas the wells produced.

-2-

At the beginning of their employment relationship with Nitro-Lift, each plaintiff signed an identical document labeled "Confidentiality/Non-Compete Agreement," which contains the arbitration clause at issue in this case. As the title of the agreement suggests, the language is generally limited to matters involving confidentiality and competition. Section 1 of the agreement adds the phrase "corporate property" to its subheading, and thereafter all the rights, obligations, and duties set forth in section 1 concern confidentiality, competition, and the return of corporate documents.

This is the only agreement between the parties and despite its title, Nitro-Lift claims it is an employment agreement because it was "essential" to plaintiffs' "relationship[] with Nitro-Lift," that "Nitro-Lift would not have hired Plaintiffs without their consent to the Agreements," and that "Plaintiffs would not have executed the Agreements without the assurance of employment by Nitro-Lift." Aplt. Br. at 6. But the only language in the contract that discusses compensation states in section 1(k) that "[i]n consideration of the receipt of Confidential Information during employment, the receipt of compensation, each element of compensation being hereby acknowledged by the Employee as adequate," the employee agrees not to compete. Aplt. App. at 238.[1] Other than that specific clause, section 1 contains no language dealing with wages, hours, overtime

---

[1] We cite only Mr. Sanchez's agreement for purposes of citation to the record because each plaintiff signed identical agreements.

compensation, or other rights, duties, and responsibilities regarding wages generally found in an employment contract.

Section 1 also references a "Section 4" and "Section 4(k)," but the agreement neither contains a section 4 nor explains what topics, rights, restrictions, or duties section 4 sets forth.[2]  Notably, section 1(m) explains that *only* Nitro-Lift may seek remedies in court, including injunctive relief and "any other remedies available to it . . . at law or in equity for any such breach or threatened breach" by the employee.  *Id.* at 239.  Also, sections 1(k), (m), and (n)

---

[2] For example, the agreement on page 3 states in section 1(k) "[t]he parties agree and acknowledge that the limitations as to time, geographical area and scope of activity to be restrained as set forth in section 4(k) are reasonable and do not impose any greater restraint than is necessary to protect the legitimate business interests of Nitro-Lift."  Aplt. App. at 238.  This section further notes that

> [t]o the extent that any part of this Section 4(k) may be invalid, illegal or unenforceable for any reason, it is intended that such part shall be enforceable to the extent that a court of competent jurisdiction shall determine that such part, if more limited in scope, would have been enforceable, and such part shall be deemed to have been so written and the remaining parts shall as written be effective and enforceable in all events.

*Id.*
Section 1(l) explains that "[i]n the event of a breach by Employee of any covenant set forth in section 4 of this Agreement, the term of such covenant will be extended by the period of the duration of such breach."  *Id.* at 239.  Section 1(m) states "[t]he parties hereto agree and acknowledge that Nitro-Lift would not have an adequate remedy at law for the breach or threatened breach by the Employee of the covenants and agreements set forth in this Section 4."  *Id.*  Section 1(n) also explains that "[a]ll of the covenants in this Section 4 shall be construed as an agreement independent of any other provision in this Agreement and the existence of any claim or cause of action of Employee against Nitro-Lift, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by Nitro-Lift of such covenants."  *Id.*

-4-

refer to section 4 self-referentially by stating "in this Section 4," suggesting some of the agreement contains boilerplate language copied from some other contract or agreement. *Id.*

Section 2 of the agreement contains the arbitration clause at issue and states in pertinent part in 2(a):

> *Any dispute, difference or unresolved question* between Nitro-Lift and the Employee (collectively, the "Disputing Parties") shall be settled by arbitration by a single arbitrator mutually agreeable to the Disputing Parties in an arbitration proceeding conducted in Houston, Texas in accordance with the rules existing at the date hereof of the American Arbitration Association . . . *and the costs (including, without limitation, reasonable fees and expenses of counsel and experts for the Disputing Parties) of such arbitration (including the costs to enforce or preserve the rights awarded in the arbitration) shall be borne by the Disputing Party whom the decision of the arbitrator is against.* If the decision of the arbitrator is not clearly against one of the Disputing Parties or the decision of the arbitrator is against more than one Disputing Party on one or more issues, the costs of such arbitration shall be borne equally by the Disputing Parties.

*Id.* at 239 (emphasis added). In addition, section 2(b) references "Section 4" as well as "Section 18," neither of which appear in the document, stating that "[n]otwithstanding the foregoing, Nitro-Lift may apply to any court of competent jurisdiction for injunctive relief to enforce its rights under this Agreement, including, without limitation, its rights under Section 4, without breach of this Section 18." *Id.* Nitro-Lift offers no explanation for why the contract references multiple sections that do not exist in the agreement.

In sworn affidavits, plaintiffs claim that when they were required to sign

-5-

the contract, it was presented to them as an agreement specifically about confidentiality and competition. They contend Nitro-Lift did not explain the arbitration provision, did not allow them to read the document or the arbitration clause it contained, and did not allow them to ask questions or consult an attorney before signing the document. Plaintiffs allege they were never told that by signing the agreement, they would be waiving their right to a jury trial for claims of unpaid wages or that they would be required to arbitrate wage disputes. Finally, plaintiffs claim they never agreed to arbitrate any wage disputes with Nitro-Lift.

Plaintiffs allege that almost every week they worked for Nitro-Lift, they each worked in excess of forty hours per week and Nitro-Lift refused to pay them "overtime compensation for the hours they worked in excess of forty," in violation of the FLSA. Aplt. App. at 170. When Mr. Sanchez discussed the issue with his supervisor, he was told that if he had a problem with the money, he should quit.[3] Mr. Sanchez and Mr. Schneider initially filed suit against Nitro-Lift in the Eastern District of Oklahoma on March 21, 2012, claiming the company failed to pay overtime wages in violation of the FLSA and the OPLA. They sought their "unpaid wages, prejudgment interest, attorney fees and costs," a declaration that Nitro-Lift's "wage policy is unlawful" and an injunction against

---

[3] Mr. Sanchez also asserts a claim for retaliation under both the FLSA and Oklahoma law, alleging Nitro-Lift fired him after he complained of its failure to pay overtime wages. This issue is not before us on appeal.

-6-

its use and enforcement. *Id.* at 11-12. They also sought liquidated damages, and class certification if other similarly situated employees were found.

In response, Nitro-Lift filed a motion to dismiss and compel arbitration, or alternatively to stay the proceeding pending arbitration. It argued that the arbitration clause contained in the agreement contractually obligated plaintiffs to submit their FLSA claims to arbitration under the Federal Arbitration Act ("FAA") and the Oklahoma Uniform Arbitration Act ("OUAA"), citing the liberal federal policy favoring arbitration, and the strong presumption in favor of arbitration under Oklahoma law. Nitro-Lift asserted the wage disputes are clearly within the scope of the arbitration clause, which mandates that "any dispute" be submitted to arbitration under the rules of the American Arbitration Association ("AAA"). In its motion, Nitro-Lift waived the originally agreed upon venue of Houston for arbitration, suggesting arbitration should take place in the Eastern District of Oklahoma.

Mr. Sanchez and Mr. Schneider filed a brief in opposition to Nitro-Lift's motion contending the arbitration provision is unenforceable with respect to their FLSA claim for a variety of reasons. They contended their wage disputes do not fall within the scope of the arbitration clause.[4] They also asserted that the

_____

[4] Plaintiffs also pointed out that the Oklahoma Supreme Court addressed the same contract and arbitration clause in *Howard v. Nitro-Lift Techs., L.L.C.*, 273 P.3d 20 (Okla. 2011), which involved a dispute concerning an issue of competition unrelated to plaintiffs' wage disputes in this appeal. *Id.* at 23. The
(continued...)

-7-

arbitration clause's fee-shifting provisions violate the substantive rights afforded

to employees by the FLSA because that statute specifically provides for awards of

attorneys fees and costs only to prevailing plaintiffs, not to prevailing defendants.

In addition, they argued that the forum selection clause and the attempted

application of commercial arbitration rules[5] make the arbitration agreement

unconscionable because these provisions would force employees to pay

substantial costs they cannot afford to arbitrate the dispute in an inconvenient

forum.

Before the district court ruled on the pending motion, plaintiffs filed an

amended complaint adding Mr. Howard as a plaintiff. Shortly thereafter, the

district court denied Nitro-Lift's pending motion to compel arbitration, addressing

only the FLSA claims and the scope of the arbitration clause. The court reasoned

that despite the broad language of the arbitration clause, plaintiffs did not agree to

---

[4](...continued)
court held that the agreement's non-competition covenants were void and
unenforceable as against Oklahoma's public policy, that it could not judicially
modify the agreement, and that the entire contract was therefore void and
unenforceable. *Id.* at 30. However, the United States Supreme Court
subsequently granted certiorari and vacated the decision of the Oklahoma
Supreme Court, holding that the court assumed the role of the arbitrator in
deciding that the covenants not to compete were invalid under state law, which
was a decision for the arbitrator in the first instance once the state court
determined there was a valid arbitration clause. *See Nitro-Lift Techs., L.L.C. v.
Howard*, 133 S. Ct. 500, 502-04 (2012).

[5] We note the AAA determined that Nitro-Lift's Demand for Arbitration
would be administered under the Employment Arbitration Rules instead of the
Commercial Arbitration Rules.

arbitrate wage disputes because the contract's subject matter was only about confidentiality and competition. The court did not address any of the other arguments raised concerning the validity of the contract. Nitro-Lift immediately filed an interlocutory appeal from the district court's decision.

On the same day that Nitro-Lift filed its appeal, it filed a motion to dismiss the amended complaint and to compel arbitration, essentially reiterating the arguments it made in its first motion. It also pointed out that, in denying its first motion to compel arbitration, the district court cited *Cummings v. FedEx Ground Package System, Inc.*, 404 F.3d 1258 (10th Cir. 2005), the controlling Tenth Circuit case concerning the scope of an arbitration clause, but failed to apply *Cummings*' three-part test in determining the arbitration clause did not cover plaintiffs' wage disputes. It argued that because the arbitration clause is broad, under *Cummings* there was a presumption of arbitrability and accordingly plaintiffs' claims were required to be submitted to arbitration. Plaintiffs filed a second brief in opposition to arbitration, reiterating arguments from their first brief.

The district court construed Nitro-Lift's second motion to compel arbitration as a Rule 60(b) motion to reconsider because Nitro-Lift had already filed an interlocutory appeal from the court's first order. The court again reasoned that plaintiffs' wage disputes fall outside the scope of the arbitration clause. It explained that although the clause is broad in scope and "there of

course arises a presumption of arbitrability," Aplt. App. at 436, the presumption was overcome because "the arbitration clause is nestled within a narrow contract pertaining only to Plaintiffs' promises regarding confidentiality and competition with Defendant." *Id.* Nitro-Lift timely appealed from the district court's second order, and we consolidated the two appeals for purposes of review.

## II

We review de novo both the district court's denial of a motion to compel arbitration, *Cummings*, 404 F.3d at 1261, and the denial of a stay pending arbitration, *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009). When both parties dispute whether an arbitration clause in a contract "applies to a particular type of controversy, [the question] is for the court." *Cummings*, 404 F.3d at 1261 (alteration in original) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

The central issue raised on appeal is whether plaintiffs' statutory wage disputes fall within the scope of an arbitration clause contained in a contract labeled Confidentiality/Non-Compete Agreement, that is, whether plaintiffs agreed to submit their FLSA wage disputes to binding arbitration by signing the agreement at issue. Nitro-Lift contends, as it did below, that the language in the arbitration clause is broad and covers any disputes between it and plaintiffs, including their current wage claims. Plaintiffs counter that because the contract

relates solely to issues of confidentiality and competition and was presented to them as such, the arbitration clause covers only disputes relating to the subject matter of the contract. They contend they never agreed to arbitrate wage disputes and to force them to do so would be contrary to the FAA and Supreme Court precedent. Our task is therefore to determine the scope of the arbitration clause at issue and whether plaintiffs' FLSA "claims fall within its scope." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004). To do so, we first turn to the purpose of the FAA and the basic principles underlying arbitration.

Congress enacted the FAA "in response to widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308-09 (2013). As is relevant here, section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[6] 9 U.S.C. § 2. The Supreme Court has described "this provision as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted). Consistent with

_____

[6] "The FAA also provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

-11-

these principles, the Court has stated that "courts must place arbitration agreements on equal footing with other contracts," *id.*, and "'rigorously enforce' arbitration agreements according to their terms." *Italian Colors*, 133 S. Ct. at 2309 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

In line with its liberal policy favoring arbitration, the Court has noted that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793 (10th Cir. 1995) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration, and thus, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985))). Indeed, the FAA and common law have created a presumption in favor of arbitration. *See Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). "This presumption in favor of arbitrability also applies where a party bound by an arbitration agreement raises claims founded on statutory rights." *Armijo*, 72 F.3d at 797 (internal quotation marks and citation omitted).

Nevertheless, because "arbitration is a matter of contract" and the authority

-12-

of an arbitrator arises only from the parties agreement to that forum in advance, "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986) (internal quotation marks and citations omitted). Federal law "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Our circuit applies a three-part test when determining whether an issue falls within the scope of an arbitration clause. *Cummings*, 404 F.3d at 1261.

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.*

*Id.* (second emphasis added) (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).

Applying *Cummings*' first step, we agree with the district court that the arbitration clause at issue here is broad. In fact, we have not found any case with an arbitration clause as broad as this, stating that "*[a]ny dispute, difference or*

*unresolved question* between" the parties must be arbitrated. Aplt. App. at 239 (emphasis added). This clause contains no limiting language, either restricting arbitration to any specific disputes or to the agreement itself. Many courts have concluded that an arbitration clause applying to disputes "arising under" or "in connection with" the agreement constitutes a broad arbitration clause. *See, e.g.*, *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (explaining that arbitration clause stating "all disputes or controversies arising under or in connection with this Agreement . . . will be settled exclusively by arbitration" was "the very definition of a broad arbitration clause" (omission in original)); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (stating that arbitration clause covering "[a]ny controversy, claim, or breach *arising out of or relating to* this Agreement . . . is a 'broad' one"); *Louis Dreyfus*, 252 F.3d at 225-27 (noting that phrase "[a]ny dispute arising from the making, performance or termination of this [agreement]," while containing limiting language, was "a broad arbitration clause"); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2nd Cir. 1995) (explaining that phrase "'[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause").

We are not as convinced as the district court that the narrow context of the contract rebuts the presumption of arbitrability because "the strong presumption in favor of arbitrability applies with even greater force when such a broad arbitration clause is at issue." *P & P Indus.*, 179 F.3d at 871 (internal quotation

marks and citation omitted).  In *Cummings*, we examined an arbitration clause that covered only "acts to terminate this Agreement," 404 F.3d at 1260, and explained that "the parties clearly manifested an intent to narrowly limit arbitration to specific disputes regarding the termination of the Operating Agreement," *id.* at 1262.  Here, there is no manifestation of an intent to limit the arbitration agreement.

Even so, a contract "must be considered as a whole so as to give effect to all of its provisions without narrowly concentrating upon some clause or language taken out of context." *Eureka Water Co. v. Nestle Waters N. Am., Inc.*, 690 F.3d 1139, 1151 (10th Cir. 2012) (quoting *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla. 1985)).  Plaintiffs contend we cannot ignore the narrow context of the agreement in which the arbitration clause is found and urge us not to read the broad arbitration clause in isolation.  Although we agree with plaintiffs' argument, at best this contention makes the arbitration clause ambiguous.  A contract "is ambiguous if it is reasonably susceptible to at least two different constructions," and to determine whether a contract is ambiguous "we look to the language of the entire agreement." *Id.* at 1149 (internal quotation marks omitted).  In our view, when the broad arbitration clause is considered together with the entire language of the narrow contract, two reasonable constructions emerge—either the parties agreed to arbitrate all disputes arising between them, or they agreed to arbitrate all disputes concerning only those issues

-15-

covered in the agreement.

We need not decide this difficult question, for we have stated that "to acknowledge the ambiguity is to resolve the issue, because all ambiguities must be resolved *in favor* of arbitrability." *Armijo*, 72 F.3d at 798. As we explained in *Local 5-857 Paper, Allied-Industrial, Chemical & Energy Workers International Union v. Conoco, Inc.*:

> [W]hen a contract contains an arbitration clause, there is a presumption in favor of arbitrability; that is, an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. The Supreme Court has held that the presumption is particularly applicable where, as in the case before us now, there is a broad arbitration clause. In such cases, *in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.*

320 F.3d 1123, 1126 (10th Cir. 2003) (emphasis added) (internal footnote, citation, and quotation marks omitted).

Here, we cannot say the ambiguity created by the admittedly narrow contract containing the broad arbitration clause provides "forceful evidence" to support plaintiffs' claim that their wage disputes do not fall within the scope of the arbitration clause. While the fact that the contract discusses only issues relating to competition, confidentiality, and retention of corporate documents certainly raises doubts as to whether plaintiffs agreed to arbitrate their wage disputes, "all doubts must be resolved in favor of coverage." *Id.*; *see also Moses*,

-16-

460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."). We therefore hold that plaintiffs' FLSA wage disputes fall within the scope of the arbitration clause.

**III**

This does not end the matter, however. Notwithstanding the "liberal federal policy favoring arbitration agreements," *Moses*, 460 U.S. at 24, agreements which require the arbitration of statutory claims are only enforceable under the FAA so "long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum," *Gilmer*, 500 U.S. at 28 (alteration in original). The Court in *Gilmer* reasoned that by submitting statutory claims to arbitration, a plaintiff does not lose the protection of the substantive rights afforded by the statute, but rather submits their resolution to an alternative forum. *Id.* at 26.

Plaintiffs contend the arbitration provision here does exactly what *Gilmer* forbids, that is, it denies them the substantive rights afforded by the FLSA because it specifically provides that "the costs (including, without limitation, reasonable fees and expenses of counsel and experts for the Disputing Parties) of such arbitration . . . shall be borne by [the losing party]," or, at a minimum, requires the parties to split the costs of arbitration. Aplt. App. at 239. Contrary to the arbitration provision, the FLSA provides: "The court in such action shall, in

-17-

addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "The FLSA's fee-shifting provision refers only to a prevailing plaintiff . . . and says nothing of a prevailing defendant." *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009). Indeed, the "FLSA entitles a prevailing defendant to attorney's fees only where the district court finds that the plaintiff litigated in bad faith." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998).

Plaintiffs rely on several cases, including our decision in *Shankle v. B–G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999), for the proposition that the fee- and cost-shifting provisions in the arbitration provision are unenforceable. In *Shankle*, the arbitration agreement required the employee to pay one-half of the arbitrator's fees, which would have cost Mr. Shankle "between $1,875 and $5,000 to resolve his claims." *Id.* at 1234. We noted that "Mr. Shankle could not afford such a fee, *and it is unlikely other similarly situated employees could either*." *Id.* at 1234-35 (emphasis added). Accordingly, we explained:

> The Agreement thus placed Mr. Shankle between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum. Essentially, B–G Maintenance required Mr. Shankle to agree to mandatory arbitration as a term of continued employment, yet failed to provide an accessible forum in which he could resolve his

-18-

statutory rights. Such a result clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws. Given this deficiency, we conclude the Agreement is unenforceable under the Federal Arbitration Act.

*Id.* at 1235 (internal footnote and citations omitted).[7]

Subsequent to our decision in *Shankle*, the Supreme Court recognized that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 90 (2000). However, in *Green Tree*, although it was "undisputed that the parties agreed to arbitrate all claims relating to their contract, including claims involving statutory rights," *id.* at 90, the arbitration agreement was silent on the allocation of fees between the parties, *id.* at 91, unlike in *Shankle* or in this case. The Court concluded that silence on the subject of fees was insufficient to render the arbitration provision unenforceable because the risk that the employee would have been "saddled with prohibitive costs [was] too speculative to justify the invalidation of [the] arbitration agreement." *Id.* The Court declined to decide "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence" because "neither during discovery nor when the case was presented on the merits was there any timely showing at all on

_____

[7] We distinguished *Shankle* in *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 779-80 (10th Cir. 2010), where the arbitration provision did not *require* that attorneys fees be awarded to the losing party but left the matter to the discretion of the arbitrator.

the point." *Id.* at 92. Nevertheless, the Court made it clear that a party resisting arbitration had the initial burden of proof to demonstrate that arbitration would be prohibitively expensive "by showing the likelihood of incurring such costs." *Id.*

It is thus unclear from *Green Tree* "'[h]ow detailed the showing of prohibitive expense must be' to support the conclusion that the provision, at a minimum, is unenforceable." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 660 (6th Cir. 2003) (en banc) (alteration in original) (quoting *Green Tree*, 531 U.S. at 92). In *Morrison*, the Sixth Circuit set forth a case-by-case approach to determine whether fee- and cost-splitting provisions in employment arbitration agreements are enforceable. *Id.* at 663-65. The court held that "potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Id.* at 663. Agreeing with *Shankle*, the court added, "if the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision in order to serve the underlying functions of the federal statute." *Id.*

In response to Nitro-Lift's motion to compel arbitration, plaintiffs filed affidavits claiming inability to pay the arbitration costs and fees. The district court did not address this issue, however, because it determined that the FLSA

claim was not within the arbitration provision.  Given our reversal of the district court, it will need to determine on remand the effect of the cost-shifting provision in the arbitration clause in light of *Shankle* and *Green Tree*.

Plaintiffs further claim that Nitro-Lift's attempt to waive the fee- and cost-shifting provisions of the arbitration agreement makes the agreement illusory.  They argue, as they did below, that Nitro-Lift is unilaterally changing the contract in an effort to make it enforceable.[8]  Plaintiffs rely on *Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002), where we held that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."[9]  *Id.* at 1219.  There,

---

[8] Nitro-Lift counters that if any of these provisions are found to be unlawful, the court should sever the provisions.  Section 1(k) of the agreement regarding non-competition and confidentiality contains a severance clause which states: "[t]o the extent that any part of *this Section 4(k)* may be invalid, illegal or unenforceable," the court may strike the unenforceable provisions and enforce the remaining parts.  Aplt. App. at 238 (emphasis added).  In context, however, it is apparent that "this Section 4(k)" is intended to be "this Section 1(k)."  Accordingly, the severance clause is by its terms applicable only to the section 1 provision on non-competition and corporate property.  Because the arbitration provision at issue is in Section 2 of the agreement, the severance clause does not apply to the arbitration provision.

[9] In determining whether an agreement to arbitrate is illusory, a court applies the state law of contracts.  *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("[S]tate law . . . is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.").  In *Hardin v. First Cash Financial Services, Inc.*, 465 F.3d 470 (10th Cir. 2006), applying Oklahoma law, we held that the arbitration agreement there was not illusory because the employer's right to unilaterally change its terms was not unlimited.  *Id.* at 478-79 (distinguishing *Dumais*).

the employees' handbook contained an arbitration clause requiring all employment disputes to be arbitrated but on the page of the handbook where the employees were required to sign, the employer reserved "the right to amend, supplement, or revise everything in the Handbook with the exception of the employees' at-will status." *Id.* at 1217.[10]

Nitro-Lift argues that its willingness to waive the forum selection clause, the fee-shifting provision, and the rules governing arbitration differ from the facts in *Dumais* in that nothing in the contract in this case expressly allows "one party the 'unfettered right to alter the arbitration agreement's existence or scope' without notice." Reply Br. at 20 (quoting *Dumais*, 299 F.3d at 1219). Plaintiffs counter that Nitro-Lift's conduct raises a question as to whether the necessity of Nitro-Lift having to waive several provisions of the agreement in order to make it enforceable effectively constitutes a unilateral right to change the agreement as it sees fit. Plaintiffs contend Nitro-Lift should not get a free pass to draft an unlawful contract, strategically waive unenforceable provisions,[11] and then count

---

[10] While a different provision of the handbook stated the employer "reserves the right to at any time change, delete, modify, or add to any of the provisions contained in this handbook at its sole discretion," except the employees' at-will status and the arbitration provision, *Dum*ais, 299 F.3d at 1217, we construed the ambiguity created by the conflicting provisions "as allowing [the employer] to change the arbitration provision at will," *id.* at 1219.

[11] We note that Nitro-Lift did not offer to waive the provision requiring the losing party to pay the other party's attorney's fees until its Reply Brief on Appeal. Reply Br. at 17.

on the court to bail it out. Aple. Br. at 29-31. *See, e.g.*, *Pérez v. Hospitality Ventures–Denver LLC*, 245 F. Supp. 2d 1172, 1173-75 (D. Colo. 2003) (applying *Green Tree*, declining to sever fee-splitting provision in absence of severance clause, and holding arbitration provision unenforceable under our decision in *Shankle* because plaintiff presented evidence that she could not afford the costs, notwithstanding that employer offered to waive costs); *see also Gourley v. Yellow Transp., LLC*, 178 F. Supp. 2d 1196, 1203-05 (D. Colo. 2001) (noting that because arbitration agreement contained no severance clause, court could not entertain defendant's offer to waive fee-shifting provision, which the court found invalid under *Shankle*).

We decline to decide these issues for the first time on appeal. Because the district court found the arbitration agreement did not cover plaintiffs' FLSA claims, it did not address any of these issues. Accordingly, we remand to the district court for further consideration of these issues in light of this opinion.


**IV**

Because we are reversing the district court's denial of the motion to dismiss and remanding for further proceedings, we must address an additional issue raised by plaintiffs claiming that the district court lacks jurisdiction to enforce the arbitration provision here. This is so, plaintiffs argue, because the forum selection clause requires arbitration in Houston and in *Ansari v. Qwest*

*Communications Corp.*, 414 F.3d 1214 (10th Cir. 2005), we held that section 4 of the FAA requires district courts to compel arbitration in accordance with the parties' agreement but prohibits courts from ordering arbitration in other districts. *Id.* at 1220-21. We said that "a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified," and that "[a]ny other result renders meaningless the § 4 mandate that arbitration and the order compelling arbitration issue from the same district." *Id.* at 1220 (internal quotation marks omitted). Relying on *Ansari*, plaintiffs contend there would not be jurisdiction in the district court to compel arbitration if we reverse and remand.

In *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044 (10th Cir. 2006), however, we held that the rule announced in *Ansari* is not jurisdictional but "one of venue which the parties" waived "by not raising the issue before the district court." *Id.* at 1051-52. In that case, "the Colorado district court granted Reynolds's motion to compel arbitration in Ohio," but "neither party questioned the district court's authority to do so." *Id.* at 1052. The key issue on appeal was "whether the rule announced in *Ansari* is jurisdictional; that is, whether the district court was without any power to adjudicate Reynolds's motion to compel arbitration." *Id.* After examining the language of section 4 and how other courts have interpreted its meaning and the meaning of similar FAA provisions, we concluded that section 4 is a venue provision and that parties may waive objections to such venue provisions. *Id.* at 1052-54. Accordingly, we

-24-

explained: "*Ansari's* holding that a district court does not have authority to compel arbitration in another district is a statement addressing venue under the FAA.  And the parties in this case have waived any objection to venue because they failed to raise the issue in the district court." *Id.* at 1055 (footnote omitted).

Here, as plaintiffs recognize, Nitro-Lift disclaimed the forum/venue provisions of its agreement and moved the district court to order arbitration in the Eastern District of Oklahoma.  In any event, plaintiffs themselves waived any issue of venue in the Eastern District of Oklahoma by failing to raise it in the district court.  *See 1mage Software*, 459 F.3d at 1055.

**V**

In sum, we REVERSE the district court's denial of Nitro-Lift's motion to compel arbitration and REMAND for further proceedings.