This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38410**

**NM NOTE HOLDING LLC, substituted as real party in interest for People's Trust Federal Credit Union,**

      Plaintiff-Appellee,

v.

**GABRIEL BETHEL; BTA LAWGROUP PLLC, Trustee; and SKI DEVELOPEMENT LLC,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Bryan Biedscheid, District Court Judge**

Sommer, Karnes & Associates, LLP
Karl H. Sommer
Santa Fe, NM

for Appellee

The Stranahan Firm, LLC
Robert A. Stranahan, IV
Santa Fe, NM

for Appellants

## MEMORANDUM OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}** The convoluted facts and odd procedural posture of this complex property dispute have frustrated this Court's review and forced us to take an unconventional route to decide the case. Defendants Gabriel Bethel and Ski-Development New Mexico,

LLC (Ski-NM) appeal the district court's decision to grant quiet title and foreclosure in favor of Plaintiff NM Note Holding LLC and to dismiss Bethel's and Ski-NM's counterclaims for reformation, rescission, and foreclosure. For the reasons set forth below, we remand for amendment of the final order and we otherwise affirm.

**BACKGROUND**

**{2}**     This case involves a tract of land called the Windland Property in Santa Fe County—part of a group of properties referred to as Saddleback Ranch. As reflected in Bethel and Ski-NM's exhibits in support of their motion for reconsideration, Ski Development, LLC (Ski-WA), a Washington limited liability company, entered into a purchase agreement with the estate of Richard L. Fisher and Sheldon Landau to acquire the Windland Property for $2,500,000. Two weeks later, Ski-WA assigned its right to purchase the Windland Property to James Scarborough for total consideration of $3,600,000. As reflected in the assignment, Scarborough was to provide $2,500,000 to be paid immediately to the estate of Fisher and Landau. The remaining $1,100,000 owed to Ski-WA was payable on the date of closing. Scarborough was to provide $380,000 in cash to Ski-WA and issue a promissory note and deed of trust in favor of Ski-WA for $720,000. Under paragraph 3.c "Consideration[,]" Ski-WA agreed that the deed of trust would be "junior to that of the lender financing the initial purchase of the property." The next day Scarborough executed a promissory note secured by a deed of trust to Ski-WA naming BTA Lawgroup PLLC as the trustee. Of note, Bethel and Ski-NM were not part of any of the original mortgage or deed of trust transactions.

**{3}**     The same day the deed of trust and promissory note were executed, Scarborough acquired the Windland Property via a special warranty deed. Scarborough financed $2,800,000 of the purchase through a loan from People's Trust Federal Credit Union (People's Trust). We provide the remainder of the history of the mortgage and deed of trust in the discussion section below.

**{4}**     In March 2014 People's Trust filed a complaint against Bethel, BTA Lawgroup, and Ski-WA seeking to quiet its title to the Windland Property, damages for slander of title, and declaratory relief as to the Ski-WA deed of trust. Ski-WA was served but never responded in any manner. As a result, a default judgment was entered against Ski-WA and it is not a party to this appeal. BTA Lawgroup filed a disclaimer of interest in the litigation conditioned on having no judgment entered against and no obligations imposed on it. BTA Lawgroup has not been active in the action since then and is not a party in this appeal.

**{5}**     Bethel filed an answer and counterclaim to the complaint on his own behalf. In addition, he attempted to add a new defendant/counterclaimant—Ski-NM—to the case. There ensued a flurry of litigation, not relevant here, that resulted in Ski-NM being allowed to intervene in the case.[1]

---

[1]There is no order in the record proper allowing intervention, but Ski-NM appears as a party in the answer filed to People's Trust's first amended complaint.

**{6}** In March 2015, People's Trust filed an amended complaint against the same parties repeating the prior claims and adding a foreclosure of mortgage count. Bethel and Ski-NM made counterclaims for reformation of note and deed of trust, in rem foreclosure, and rescission based on economic coercion on the basis that they had an interest in the Windland Property despite their absence from the original deed.

**{7}** People's Trust filed a motion for judgment on the pleadings for liability against Bethel and Ski-NM on the complaint and counterclaims. Approximately ten months later, People's Trust filed a first amended motion for judgment on the pleadings for liability on the complaint and the counterclaims, which incorporated all of the exhibits from its first motion and included one more exhibit. People's Trust argued that Bethel and Ski-NM's counterclaims were barred based on claim preclusion and issue preclusion, the statute of limitations, and lack of standing. In addition, People's Trust argued that Bethel and Ski-NM could not rescind the note and mortgage because it was part of a larger transaction, which could only be unraveled as a whole. People's Trust also asserted that it was entitled to foreclose on its mortgage for the Windland Property but did not flesh out its argument. Bethel and Ski-NM responded arguing that People's Trust's motion should be reviewed as a motion for summary judgment because it included matters outside the pleadings. Substantively, they argued that claim preclusion and issue preclusion did not apply, the claims were timely, People's Trust had misstated the law on rescission, and that discovery was pending so summary judgment was not appropriate.

**{8}** The district court granted People's Trust's motion. The district court found that People's Trust became the owner of the Windland Property when it acquired the property by warranty deed in 2009. It also found the deed of trust, recorded in 2010, and Bethel's notice of equitable interest, recorded in August 2013, had no effect on People's Trust's first position. It therefore quieted title to the Windland Property in People's Trust's favor. Next, the district court granted People's Trust's action for declaratory judgment, concluding "neither Bethel nor anyone else had a right to record the . . . [d]eed of [t]rust in 2010 or the [n]otice of [i]nterest in 2013" and finding "the . . . [d]eed of [t]rust and [n]otice of interest to be null and void with no force or effect." As for People's Trust's foreclosure claim, the district court granted in rem judgment to People's Trust against Bethel and Ski-NM "in the full amount owed on the principal and interest due on . . . People's [Trust's] [f]irst [n]ote, [l]oan [a]greement, and [m]ortgage.

**{9}** The district court then turned to Bethel and Ski-NM's counterclaims. It found that their counterclaims were barred by the statute of limitations and claim preclusion based on an order in a separate case involving a different property within Saddleback Ranch. The district court found that "Defendants were present and participated at the closing where . . . Defendants claim these allegations occurred and Defendants were aware at the time, in 2008, of what was occurring or had occurred and . . . Defendants did not file a complaint until 2014." Furthermore, it concluded that Bethel and Ski-NM lacked standing because neither was a party to the note or a holder with the right to enforce it. And finally, the district court decided Bethel and Ski-NM's request for rescission failed to state a claim in addition to being barred by the statute of limitations.

**{10}** Later that month, the district court issued a final judgment, decree quieting title, and decree of foreclosure in favor of People's Trust. Among the other issues, the district court determined "[People's Trust] is granted an in rem judgment against . . . Defendants in the amount of $2,858,023.70, which is secured by the lien of [People's Trust]'s [f]irst [m]ortgage." After this final judgment, the district court granted a motion to substitute NM Note Holding as the real party in interest because People's Trust assigned all their interests to NM Note Holding. Bethel and Ski-NM appealed.

## DISCUSSION

### Standard of Review

**{11}** According to Rule 1-012(C) NMRA,

> [if] matters outside the pleading are presented to and not excluded by the court, [a motion for judgment on the pleadings] shall be treated as one for summary judgment and disposed of as provided in Rule 1-056 NMRA, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 1-056.

*See Peck v. Title USA Ins. Corp.*, 1988-NMSC-095, ¶ 10, 108 N.M. 30, 766 P.2d 290 ("Since matters outside the pleadings were presented to the [district] court and since both parties had adequate notice to present all pertinent material at the hearing, the [district] court correctly treated the Rule 1-012(B)(6) . . . motion as a motion for summary judgment."); *Lopez v. Ski Apache Resort*, 1992-NMCA-047, ¶ 7, 114 N.M. 202, 836 P.2d 648 (holding that the order dismissing the plaintiffs' claims should be reviewed as a motion for summary judgment because "[t]he court's decision to grant the motion was based on matters alleged in the pleadings, facts stipulated to by the parties, and the record containing affidavits submitted by the parties both in support and opposition to [the d]efendants' motions").

**{12}** "Summary judgment is reviewed on appeal de novo." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548. We view the evidence "in the light most favorable to the party opposing summary judgment." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. "In New Mexico, summary judgment may be proper when the moving party has met its initial burden of establishing a prima facie case for summary judgment." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. "Once this prima facie showing has been made, the burden shifts to the non[]movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted).

**{13}** We note that the district court's order does not consistently follow either the Rule 1-012(B)(6) standard—because it makes findings of fact—or the summary judgment standard—because it does not apply the burden shifting framework. The parties do not

adequately address this part of the district court's order. This frustrated our review and helps explain the unconventional nature of our opinion.

**{14}**     This case was singularly litigated by both parties. The issues are obfuscated by years of litigation in multiple cases, an atypical procedural posture, evidence strewn throughout the record, and unsupported factual allegations in both the record proper and in the briefs to this Court. The district court's decision was in the alternative and conclusory. The order resolves the claims and counterclaims but it provides us a rather murky road map to navigate, with little to no explanation of the court's reasoning. Moreover, neither party regularly cites to the record proper for the assertions in their briefs. For these reasons, we review the case and affirm on bases not relied on by the district court. *TexasFile LLC v. Bd. of Cnty. Comm'rs*, 2019-NMCA-038, ¶ 10, 446 P.3d 1173 ("Where . . . we consider a ground for affirming not relied upon by or presented to the district court, we may affirm as long as application of the new ground does not require us to look beyond the factual allegations raised and considered in the district court and it would not be unfair to the appellant.").

## Counterclaims

**{15}**     Bethel and Ski-NM argue that the district court erred in dismissing their counterclaims because it improperly applied claim preclusion. They also argue that the six-year statute of limitations for contracts applies to their counterclaims. Because People's Trust filed their complaint within that six-year time frame and since a counterclaim is not barred by the statute of limitations if it was not barred at the time the complaint was filed, their counterclaims are not barred by the statute of limitations. We decline to address these arguments because Bethel and Ski-NM failed to present evidence that they could assert any of these claims given that they were not parties to the original purchase of the property, or any of the subsequent transactions involving the property.

**{16}**     We begin by laying out the allegations each party made and supported with evidence. Where an allegation was not supported with evidence, we so note. Scarborough financed the purchase of the Windland Property by executing a $2,800,000 promissory note secured by a mortgage in favor of People's Trust. [RP 417-428]2 The mortgage and promissory note were signed on June 17, 2008, and the mortgage was recorded on June 23, 2008. [RP 417, 426] The loan was made pursuant to a business loan agreement with People's Trust dated June 17, 2008. [RP 429-434] Less than a year later on July 24, 2009, Scarborough executed a warranty deed in lieu of foreclosure conveying the Windland Property to People's Trust. The deed was recorded five days later. [RP 15]

---

2In this section where we lay out the specific facts and circumstances of the mortgage and deed of trust, we include record proper citations for the benefit of the parties. The atypical inclusion in only this section of the opinion is to address the parties' lack of record proper cites and failure to reference the minutiae that is important to the resolution of this case.

**{17}** Before executing People's Trust's note and mortgage, Ski-WA entered into a purchase agreement with the estate of Fisher and Landau to acquire the Windland Property for $2,500,000. [RP 936-956] Two weeks later, Ski-WA assigned its right to purchase the Windland Property to Scarborough for $3,600,000. [RP 935 ¶ 1, 3] As reflected in the assignment, Scarborough was to provide $2,500,000 to be paid immediately to the estate of Fisher and Landau. [RP 935 ¶ 3.a] Scarborough was to provide $380,000 in cash to Ski-WA and issue a promissory note and deed of trust in favor of Ski-WA for $720,000. [RP 935 ¶ 3.b-c] That loan was memorialized by a promissory note secured by a deed of trust in favor of Ski-WA. [RP 449-451, 452-66]

**{18}** The Ski-WA promissory note was immediately endorsed—or assigned—by Michael Skladany, the manager of Ski-WA, to a limited liability company called 2008 Saddleback LLC. [RP 36, 401 ¶ 17, 38-71, 40] Neither the note nor the deed of trust were contemporaneously recorded, but in September 2013, Scarborough, as the manager of 2008 Saddleback, signed a "Notice of Assignment of Promissory Note and of Deed of Trust," which was recorded the next month. [RP 72] The notice explained that the promissory note and deed of trust executed by Scarborough in favor of Ski-WA were transferred to 2008 Saddleback on June 19, 2008. [RP 72]

**{19}** The same day the notice of assignment was executed, Scarborough executed a "Notice of Substitution of Trustee," wherein he appointed People's Trust "successor trustee under the deed of trust." [RP 77] This notice was recorded on October 4, 2013. [RP 77] Finally, on the day the notice was recorded, People's Trust—as the "successor trustee" under the deed of trust—"discharge[d] all of the real estate mentioned in said [d]eed of [t]rust from the lien and operation thereof." [RP 78] This release was recorded on October 8, 2013. [RP 78]

**{20}** The deed of trust was recorded by Bethel on July 23, 2010, after the promissory note—and the deed of trust—was assigned to 2008 Saddleback. [RP 16-29; 399 ¶ 11; 435 ¶ 1] Bethel and Ski-NM alleged in their counterclaims and in their brief to this Court that the payee appearing on the note and the beneficiary of the deed of trust were intended to be executed for Ski-NM. [RP 438 ¶ 11; BIC 15] On August 26, 2013, Bethel executed and recorded a "Notice of Equitable Interest" in which he attested that he "own[ed] an [e]quitable [i]nterest in the property known as: [t]he Windland Residence on Saddleback Ranch in the County of Santa Fe." [RP 30-33] The recording of the deed of trust and Bethel's claim of an "equitable interest" are what prompted People's Trust to file their complaint. [RP 404-405 ¶ 32]

**{21}** Bethel and Ski-NM argue that their interest and the basis of the 2013 notice of equitable interest stems from the fact that Ski-NM is comprised of Ski-WA, whose sole member was Skladany, and Bethel Financial, whose sole member was Bethel. They allege that "[t]he [Ski]-NM [o]perating [a]greement automatically terminated any and all interest held by Ski-WA in Saddleback [Ranch] related properties, which include, but are not limited to the Windland [P]roperty, in the event of personal bankruptcy." The only evidence Bethel and Ski-NM provide for these allegations about Bethel and Ski-NM's interests in relation to Ski-WA's interest is Ski-NM's operating agreement and an

amendment to the operating agreement. The operating agreement states Ski-NM's primary purpose was the "holding of and directing of all assets related to the acquisition and development of Saddleback Ranch[.] These assets include but are not limited to all rights and money vested in the current purchase and sale agreement held between [Ski-WA] and the current owners of Saddleback Ranch regarding the purchase of Saddleback Ranch." The operating agreement also states that "[t]he [m]embers hereby reserve the right to withdraw from the LLC at any time. Should a [m]ember withdraw from the LLC because of choice, bankruptcy, or dissolution, the membership interest held by any member who withdraws by choice or otherwise will revert to and be retained by the LLC and divided pro-rata amongst the surviving members." An amendment to the operating agreement permitted Skladany signatory powers to sign singularly and on behalf of both managing members of Ski-NM for the purpose of executing specified documents.

**{22}**    We find Bethel and Ski-NM's claims to interest in the Windland Property unpersuasive. First, there is no evidence in the record that might support Bethel and Ski-NM's allegation that Ski-NM was or was intended to be a party to the Scarborough Windland Property purchase transaction. There is no evidence of any conversation or arrangements between Skladany and Bethel concerning financing such a transaction. There is no evidence that Ski-WA, Skladany, or Bethel ever actually contributed capital to Ski-NM as apparently contemplated in the Ski-NM operating agreement. There is no evidence that Ski-NM ever engaged in any meaningful economic activity of any kind, including any material action to purchase the Windland Property.

**{23}**    Second, there is no evidence in the record that Ski-WA withdrew, filed for bankruptcy, or dissolved, triggering the transfer of interests set out in the operating agreement. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). Thus, even if the contract could be construed in the way that Bethel and Ski-NM construe it, there is no evidence that Ski-WA's interest transferred to Ski-NM, let alone to Bethel.

**{24}**    Third, the Ski-NM operating agreement cannot bear the interpretation Bethel and Ski-NM argue for. Interpretation of a contract is an issue of law that we review de novo. *W. Farm Bureau Ins. Co. v. Carter*, 1999-NMSC-012, ¶ 4, 127 N.M.186, 979 P.2d 231. Bethel and Ski-NM's allegation that the Ski-NM operating agreement transferred all assets related to the purchase of the Saddleback Ranch properties, including the Windland Property, to Ski-NM is simply not supported by the plain language in the document and does not support the conclusion that Ski-NM had any interest in the Ski-WA deed of trust. *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803 ("The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." (internal quotation marks and citation omitted)). The operating agreement provides that the primary purpose of Ski-NM is to hold and direct all of its assets in service of its intended "acquisition and development of Saddleback

Ranch." The contributions section provides that each member will provide "$175,000.00 in Earnest Money Deposit applied to Saddleback Ranch Purchase Contract." The operating agreement cannot be interpreted to cover, contemplate, or provide for an assignment and/or loan transaction to a third person for their purchase of the Windland Property. On its face, the operating agreement is irrelevant to the purchase transaction that actually occurred. Thus, we conclude that Bethel and Ski-NM have no viable contract-based claims against People's Trust or its successors.

**{25}**    Nonetheless, Bethel and Ski-NM have maintained throughout this litigation that Ski-NM was supposed to be the named beneficiary of the original deed of trust, and, it does not matter that Ski-NM was not the named beneficiary because all of Ski-WA's assets invariably were transferred to Ski-NM. Having concluded that Bethel and Ski-NM have not demonstrated any viable contract claims, the only question is whether they have any viable tort claims. We conclude they do not because the statute of limitations bars any claims they might be able to assert. Counts I and II of the counterclaims sound in contract and are subject to the analysis above. Count "V" [sic] seeks "rescission based on economic coercion" and sounds in tort. The allegations here describe wrongful and fraudulent conduct by Scarborough and perhaps Skladany in changing the party to the $720,000 note from Ski-NM to Ski-WA. These events all allegedly occurred at the closing of the transaction on June 18, 2008. The statute of limitations for actions asserting fraud is four years. NMSA 1978, § 37-1-4 (1880). Thus, the statute of limitations ran on June 19, 2012, unless tolled. Apart from the unverified assertions in the counterclaim that Bethel and Ski-NM did not discover the fraud until People's Trust filed their complaint in May 2014, there is no basis to find that the running of the statute was tolled.

**{26}**    Alternately, the tort claims are not viable because the persons accused of committing the torts are not parties in this case. The counterclaims are to reform the promissory note and deed of trust or to rescind the promissory note and deed of trust. People's Trust's interest—and therefore the interest of NM Note Holding—in the mortgage from June 2008 and the warranty deed in lieu of foreclosure from July 2009 are completely separate and apart from any interest stemming from the deed of trust. People's Trust was not a party to the Ski-WA promissory note or deed of trust. And there is no allegation that it was involved in any mistake or fraud that would require the documents to be reformed or rescinded. People's Trust obtained its fee interest through the transfer of the promissory note to 2008 Saddleback and 2008 Saddleback's appointment of People's Trust as successor trustee by Scarborough. Based on Bethel and Ski-NM's allegations, it is Skladany and Scarborough who were involved in the closing in June 2008 who would be appropriate real parties in interest or defendants in a cross-claim. *See O'Brien v. Behles*, 2020-NMCA-032, ¶ 26, 464 P.3d 1097 ("[W]hile standing focuses on whether the plaintiff's injuries are fairly traceable to the defendant's conduct, the real party in interest requirement focuses on whether the plaintiff is the person who possesses the right sought to be enforced." (internal quotation marks and citation omitted)). People's Trust's awareness of the Ski-WA note and deed of trust at the time of the closing does not change this unless they were complicit in the alleged wrongdoing. Bethel and Ski-NM have not produced any evidence—much less

established a genuine issue of material fact—demonstrating that People's Trust is a blameworthy party against whom a remedy should be pursued. Nor is it a party that can grant the relief.

**Complaint**

**{27}** Bethel and Ski-NM argue that the district court erred in quieting title of the Windland Property in favor of People's Trust and foreclosing on the Windland Property for several reasons. They argue the district court erred because it accepted People's Trust's assertion that People's Trust financed 100 percent of the purchase price of the Windland Property; Skladany did not have authority to dispose of assets held by Ski-NM; Scarborough's substitution of BTA Law Group with People's Trust as successor trustee to the deed of trust was without consent from, notice to, or agreement of Ski-NM; and People's Trust's warranty deed in lieu of foreclosure is subject to the deed of trust. Finally, it argues that the district court erred in granting an in rem judgment to People's Trust. We address each argument in turn.

**{28}** The evidence does not demonstrate that the district court accepted People's Trust's assertion that People's Trust financed 100 percent of the purchase price of the Windland Property. Bethel and Ski-NM cite to one of three unrelated pages of a transcript of a hearing in front of the district court. The pages include argument made by People's Trust's counsel where he states that the lender made three mistakes, including that "they loaned 100 percent of the acquisition price and closing costs, and well, as the [c]ourt knows, that's not a very good idea." This evidence simply does not prove the district court took this assertion as true and the district court's order makes no reference or inference that it took as true that People's Trust loaned 100 percent of the acquisition price.

**{29}** Bethel and Ski-NM next argue that Skladany did not have authority to dispose of assets held by Ski-NM and that Scarborough's substitution of BTA Law Group with People's Trust as successor trustee to the deed of trust was without consent from, notice to, or agreement of Ski-NM. As we noted above, Skladany was the manager of Ski-WA who assigned the deed of trust to 2008 Saddleback. The assignment was from Ski-WA, not Ski-NM. As we concluded above, we have no evidence that Ski-NM had any interest in the deed of trust. Thus, even if Ski-WA did not have authority to dispose of Ski-NM's assets, it has no bearing on our decision concerning the deed of trust or the substitution of the successor trustee.

**{30}** We next address Bethel and Ski-NM's argument that People's Trust's warranty deed in lieu of foreclosure is subject to the deed of trust. This raises a question as to the priority of liens on real estate. The record is silent as to whether there was any discussion or agreement between People's Trust and Ski-WA as to which of their liens would have first priority. However, as we have repeatedly referenced above, in the "Agreement to Assign Purchase and Sale Agreement" between Scarborough and Ski-WA, Scarborough was to provide $2,500,000 to be paid immediately to the estate of Fisher and Landau. Scarborough was to provide $380,000 in cash to Ski-WA and issue

a promissory note and deed of trust in favor of Ski-WA for $720,000. Under paragraph 3.c "Consideration[,]" Ski-WA agreed that the deed of trust would be "junior to that of the lender financing the initial purchase of the property." Scarborough borrowed $720,000 from Ski-WA. That loan was memorialized by a promissory note secured by a deed of trust in favor of Ski-WA. As the secondary lien established in the assignment agreement, Ski-WA's deed of trust is wiped out by the foreclosure of People's Trust's mortgage. The foreclosure makes the deed in lieu of foreclosure moot or irrelevant.

**{31}**    We finally turn to Bethel and Ski-NM's argument that the district court erred in determining People's Trust was entitled to an in rem judgment against Bethel and Ski-NM. The district court's order granting People's Trust's first amended motion for judgment on the pleadings, concluded that People's Trust's mortgage against the Windland Property be foreclosed, stated that it "[grants] in rem judgment to . . . Plaintiff against Defendants in the full amount owed on the principal and interest due on the People's [Trust's f]irst [n]ote, [l]oan [a]greement, and [m]ortgage. People's [Trust's] . . . [m]ortgage lien is a valid lien against the Windland Property and is prior and paramount to any right, title or interest of . . . Defendants." The district court's final judgment, decree quieting title, and decree of foreclosure stated, "Plaintiff is granted an in rem judgment against . . . Defendants in the amount of $2,858,023.70, which is secured by the lien of [People's Trust]'s . . . [m]ortgage."

**{32}**    Bethel and Ski-NM argue that neither were party to People's Trust's mortgage or promissory note in favor of Scarborough, so they cannot be liable for the debt attached to either. NM Note Holding argues that an in rem judgment poses no personal liability for money damages and they specifically made a claim for in rem judgment as to not impose personal liability against Bethel and Ski-NM.

**{33}**    We agree with both parties that NM Note Holding—as successor in interest to People's Trust—is not entitled to a money judgment against Bethel or Ski-NM as neither party was a party to nor had any other interest in the mortgage or note. As NM Note Holding agrees with this proposition, we conclude the district court's final judgment, decree quieting title, and decree of foreclosure should be amended to state "9. Plaintiff is granted an in rem judgment in the amount of $2,858,023.70, which is secured by the lien of Plaintiff's First Mortgage. The First Mortgage lien is a valid lien against the Windland Property and is prior and paramount to any right, title or interest in or to the Windland Property, or any part of it, of Defendants or any of them or anyone claiming by, through, or under any of them. Therefore, Bethel and Ski-NM are not liable for the judgment.

**CONCLUSION**

**{34}**    We remand to the district court to amend the final judgment, decree quieting title, and decree of foreclosure in accordance with this opinion, and otherwise affirm.

**{35}    IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**